NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 23-5038

CARTER PAGE,

*Plaintiff-Appellant*,

*v.*

JAMES B. COMEY; ANDREW McCABE; KEVIN CLINESMITH; PETER STRZOK; LISA PAGE; JOE PIENTKA III; STEPHEN SOMMA; BRIAN J. AUTEN; UNITED STATES DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; UNITED STATES OF AMERICA; JOHN DOE 1-10; JANE DOE 1-10,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:20-cv-03460-DLF*

## PROOF BRIEF FOR DEFENDANTS-APPELLEES

MEAGHAN VERGOW
ANDREW R. HELLMAN
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
mvergow@omm.com
andrewhellman@omm.com

*Counsel for Defendant-Appellee*
  *Stephen Somma*

DAVID N. KELLEY
O'MELVENY & MYERS LLP
Times Square Tower
Seven Times Square
New York, New York 10036
(212) 326-2000
dkelley@omm.com

– and –

MEREDITH N. GARAGIOLA
DANIEL BROVMAN
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
mgaragiola@omm.com
dbrovman@omm.com

*Counsel for Defendant-Appellee*
  *James B. Comey*

*(For Continuation of Appearances See Inside Cover)*

BRIGIDA BENITEZ
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
bbenitez@steptoe.com

*Counsel for Defendant-Appellee*
  *Andrew McCabe*

PATRICK F. LINEHAN
BRIAN M. HEBERLIG
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
plinehan@steptoe.com
bheberlig@steptoe.com

*Counsel for Defendant-Appellee*
  *Brian J. Auten*

ROBERT J. KATERBERG
AMY JEFFRESS
KAITLIN KONKEL
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-5000
robert.katerberg@arnoldporter.com
amy.jeffress@arnoldporter.com
kaitlin.konkel@arnoldporter.com

*Counsel for Defendant-Appellee*
  *Lisa Page*

CHRISTOPHER C. MUHA
DILLON PLLC
1717 K Street, NW, Suite 900
Washington, DC 20006
(202) 787-5858
cmuha@dillonpllc.com

*Counsel for Defendant-Appellee*
  *Kevin Clinesmith*

AITAN D. GOELMAN
IVANO M. VENTRESCA
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800
agoelman@zuckerman.com
iventresca@zuckerman.com

*Counsel for Defendant-Appellee*
  *Peter Strzok*

JOSEPH R. PALMORE
JAMES M. KOUKIOS
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
(202) 887-1500
jpalmore@mofo.com
jkoukios@mofo.com

– and –

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
aavvocato@mofo.com

*Counsel for Defendant-Appellee*
  *Joe Pientka III*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel for defendants-appellees James B. Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka III, Stephen Somma, and Brian J. Auten certify as follows:

### A.    Parties and Amici

Plaintiff in the district court, and appellant here, is Carter Page. Defendants in the district court, and appellees here, are James B. Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka III, Stephen Somma, Brian J. Auten, the United States Department of Justice, the Federal Bureau of Investigation, and the United States of America.  There were no amici or intervenors in the district court.  At the time of filing, there were no amici or intervenors before this Court.

### B.    Rulings Under Review

Plaintiff-appellant seeks review of the September 1, 2022, Order and Memorandum Opinion in *Page v. Comey*, No. 1:20-cv-03460-DLF, 628 F. Supp. 3d 103 (D.D.C. 2022) (Friedrich, J.), granting defendants-

appellees' motions to dismiss.  That opinion is reproduced at pages __ to __ of the Joint Appendix (JA).

### C.    Related Cases

The case on review has not previously been before this Court or any other.  Counsel for James B. Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka III, Stephen Somma, and Brian J. Auten are not aware of any related cases involving substantially the same parties and the same or similar issues, as defined in D.C. Circuit Rule 28(a)(1)(C).

*/s/ David N. Kelley*
David N. Kelley

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
        CASES..................................................................................... i

TABLE OF AUTHORITIES .................................................... i

GLOSSARY ......................................................................... xi

INTRODUCTION ................................................................. 1

STATEMENT OF JURISDICTION......................................... 1

STATEMENT OF THE ISSUES.............................................. 1

PERTINENT STATUTES ...................................................... 2

STATEMENT OF THE CASE ................................................. 2

    A.    Factual Background ................................................ 3

    B.    Procedural History ................................................. 9

SUMMARY OF ARGUMENT ................................................ 12

STANDARD OF REVIEW..................................................... 15

ARGUMENT ....................................................................... 15

I.    Plaintiff Fails To State A Valid FISA Claim. ................ 15

    A.    Plaintiff Does Not Adequately Allege That Any
        Defendant "Engaged In" Electronic Surveillance
        Within The Meaning Of The Statute. .................. 16

        1.    Plaintiff forfeited his new appellate arguments in
            the district court and has abandoned his earlier
            (meritless) aiding-and-abetting argument. ............... 18

        2.    The district court correctly interpreted "engaging
            in" surveillance to mean conducting surveillance,
            not applying for authorization for it or
            participating in any related activities. ...................... 21

        3.    Receiving or possessing information after it is
            collected does not amount to "engaging in
            electronic surveillance." ............................................ 31

# TABLE OF CONTENTS
## (Continued)

**Page**

      4.    FISA's history and purpose confirm the district court's reading of its text. ...............................39

  B.    Plaintiff Does Not Plausibly Allege That Any Defendant Used Or Disclosed Information Obtained By Electronic Surveillance In Violation Of FISA......................41

      1.    The district court correctly concluded that plaintiff's conclusory and generalized allegations do not give rise to a plausible "use or disclose" claim. ..............................................42

      2.    The district court correctly concluded the complaint fails to plausibly allege improper disclosure against Peter Strzok or Lisa Page. ............48

II.   In The Alternative, Plaintiff's Claims Are Time Barred. .............51

CONCLUSION ......................................60

CERTIFICATE OF COMPLIANCE ......................65

CERTIFICATE OF SERVICE.............................66

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 143 (1987) ................................................................53

*Andes v. Knox*,
  905 F.2d 188 (8th Cir. 1990) ...................................................59

*Arias v. Universal Music Grp.*,
  640 F. Supp. 3d 84 (D.D.C. 2022) ..........................................46

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................43

*Atherton v. D.C. Off. of Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ................................................44

*Bailey v. United States*,
  568 U.S. 186 (2013) ................................................................30

*Broidy Cap. Mgmt. LLC v. Muzin*,
  2020 WL 1536350 (D.D.C. Mar. 31, 2020)..............................20

*Crandon v. United States*,
  494 U.S. 152 (1990) ................................................................38

*Davis v. Zirkelbach*,
  149 F.3d 614 (7th Cir. 1998) ...................................................54

*Dean v. United States*,
  556 U.S. 568 (2009) ................................................................26

*Doe v. DOJ*,
  753 F.2d 1092 (D.C. Cir. 1985) ..............................................52

*Elec. Priv. Info. Ctr. v. IRS*,
  910 F.3d 1232 (D.C. Cir. 2018) ........................................15, 51

v

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Est. of Mickens v. U.S. Bank Nat'l Ass'n,*
   2021 WL 3418955 (D.D.C. Aug. 5, 2021) ............................................. 46

*Feldman v. CIA,*
   797 F. Supp. 2d 29 (D.D.C. 2011) ........................................................ 47

*GO Computer, Inc. v. Microsoft Corp.,*
   508 F.3d 170 (4th Cir. 2007) ................................................................ 60

*Greenbaum v. Islamic Republic of Iran,*
   67 F.4th 428 (D.C. Cir. 2023) .............................................................. 21

*Henthorn v. Dep't of Navy,*
   29 F.3d 682 (D.C. Cir. 1994) ............................................................... 44

*Hobson v. Wilson,*
   737 F.2d 1 (D.C. Cir. 1984) ................................................ 55, 57, 58, 59

*In re Sealed Case,*
   310 F.3d 717 (FISA Ct. Rev. 2002) ..................................................... 35

*INS v. Cardoza-Fonseca,*
   480 U.S. 421 (1987) .............................................................................. 20

*Jankovic v. Int'l Crisis Grp.,*
   822 F.3d 576 (D.C. Cir. 2016) ............................................................. 20

*Kareem v. Haspel,*
   986 F.3d 859 (D.C. Cir. 2021) ............................................................. 51

*Klein v. City of Beverly Hills,*
   865 F.3d 1276 (9th Cir. 2017) .................................................. 55, 56, 57

*Lanier v. Bryant,*
   332 F.3d 999 (6th Cir. 2003) ............................................................... 54

vi

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Loughrin v. United States*,
    573 U.S. 351 (2014) ..................................................................... 23

*N. Star Steel Co. v. Thomas*,
    515 U.S. 29 (1995) ....................................................................... 52

*N.Y. Am. Water Co. v. Dow Chem. Co.*,
    2020 WL 9427226 (E.D.N.Y. Dec. 11, 2020) .................................. 47, 48

*Nichols v. Vilsack*,
    2015 WL 9581799 (D.D.C. Dec. 30, 2015) ........................................ 46

*Norfolk S. Ry. Co. v. Sorrell*,
    549 U.S. 158 (2007) ..................................................................... 39

*Owens v. BNP Paribas, S.A.*,
    897 F.3d 266 (D.C. Cir. 2018) ....................................................... 20

*Petit v. U.S. Dep't of Educ.*,
    675 F.3d 769 (D.C. Cir. 2012) ....................................................... 19

*Potter v. District of Columbia*,
    558 F.3d 542 (D.C. Cir. 2009) ....................................................... 49

*Richards v. Wisconsin*,
    520 U.S. 385 (1997) ..................................................................... 29

*Rotella v. Wood*,
    528 U.S. 549 (2000) ................................................................. 53, 59

*Russello v. United States*,
    464 U.S. 16 (1983) ....................................................................... 24

*Simmons v. District of Columbia*,
    750 F. Supp. 2d 43 (D.D.C. 2011) .................................................... 59

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Smith v. Nixon,*
 606 F.2d 1183 (D.C. Cir. 1979) ............................................................... 58

*Sparshott v. Feld Ent., Inc.,*
 311 F.3d 425 (D.C. Cir. 2002) ............................................................... 54

*Sprint Commc'ns Co. v. FCC,*
 76 F.3d 1221 (D.C. Cir. 1996) ........................................................ 53, 57

*Tannerite Sports, LLC v. NBCUniversal News Grp.,*
 864 F.3d 236 (2d Cir. 2017) ................................................................ 46

*Toumazou v. Turkish Republic of Northern Cyprus,*
 71 F. Supp. 3d 7 (D.D.C. 2014) ............................................................ 46

*United States v. Belfield,*
 692 F.2d 141 (D.C. Cir. 1982) ............................................................ 39

*United States v. Chavez,*
 416 U.S. 562 (1974) ............................................................................. 30

*United States v. Hansen,*
 599 U.S. 762 (2023) ............................................................................. 26

*United States v. Koyomejian,*
 946 F.2d 1450 (9th Cir. 1991) .............................................. 22, 52, 54

*United States ex rel. Head v. Kane Co.,*
 798 F. Supp. 2d 186 (D.D.C. 2011) ..................................................... 47

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.,*
 685 F. Supp. 2d 129 (D.D.C. 2010) ..................................................... 47

**Statutes**

18 U.S.C. § 2511 ................................................................................... 54

viii

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

18 U.S.C. § 2520 .................................................................................54

50 U.S.C. § 1801 ........................... 20, 21, 23, 24, 25, 27, 32, 34, 35, 49, 50

50 U.S.C. § 1804 ...........................................................................35, 37

50 U.S.C. § 1805 ..................................................................................35

50 U.S.C. § 1806 ..................................................................................41

50 U.S.C. § 1809 ........................... 13, 16, 21, 37, 38, 40, 49, 56

50 U.S.C. § 1810 ..................................................................................15

50 U.S.C. § 1813 ..................................................................................36

50 U.S.C. § 1827 ..................................................................................29

D.C. Code § 12-301 ........................................................................51, 52

Pub. L. No. 110-261, 122 Stat. 2436 (July 10, 2008)..........................23, 28

Pub. L. No. 114-23, 129 Stat. 268 (June 2, 2015)....................................23

## Other Authorities

*Acquisition*, *Black's Law Dictionary* (5th ed. 1979) ................................33

*Acquisition*, *Merriam-Webster's New Collegiate Dictionary* (1977)........33

Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page,* Wash. Post (Apr. 11, 2017) ....................................................... 7, 8, 50, 55

*Engage*, *Black's Law Dictionary* (5th ed. 1979) ....................................22

*Engage*, *Merriam-Webster's New Collegiate Dictionary* (1977) .............22

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Foreign Intelligence Surveillance Act of 1978: Hearing on S. 1566 Before the Subcomm. on Intel. & the Rts. of Ams. of the S. Select Comm. on Intel.*, 95th Cong. (1978) ....................................................... 40

Gina Stevens & Charles Doyle, Cong. Rsch. Serv., *Privacy: An Overview of Federal Statutes Governing Wiretapping and Electronic Eavesdropping* (Oct. 9, 2012) ............................................... 52

H.R. Rep. No. 95-1283 (1978) .................................................................. 40

H.R. Rep. No. 95-1720 (1978) ........................................................... 26, 40

OIG, DOJ, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (2019) ............... 2, 3, 4, 9

S. Rep. No. 95-701 (1978) ........................................................................ 27

## GLOSSARY

| | |
|---|---|
| Br. | Plaintiff-Appellant's Opening Brief |
| JA | Joint Appendix |
| FISA | Foreign Intelligence Surveillance Act |
| FISC | Foreign Intelligence Surveillance Court |
| OIG | Office of the Inspector General |

## INTRODUCTION

The district court correctly held that plaintiff failed to plausibly allege a claim under the Foreign Intelligence Surveillance Act (FISA). As delimited by Congress, that legislation cannot be stretched to impose liability on individuals who did not actually "engage in" the electronic interception of communications, or intentionally use or disclose the fruits of such unauthorized electronic surveillance. Because plaintiff—despite amending his complaint twice—has failed to allege any conduct within the proper boundary of FISA's prohibitions, the judgment below should be affirmed.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. Whether the district court correctly dismissed the complaint for failure to state a plausible claim under FISA.

II. Whether plaintiff's FISA claims are untimely even if adequately alleged.

1

## PERTINENT STATUTES

All applicable statutes are contained in the statutory addendum submitted by the plaintiff-appellant.

## STATEMENT OF THE CASE

Plaintiff's claims against the individual defendants fail for numerous independent reasons, some deriving from individual circumstances.  This brief focuses primarily on the pleading deficiencies addressed by the district court common to all individual defendants.[1] All factual background is drawn from the operative complaint, JA__[SAC], and the documents it incorporates, including a report issued by the Office of the Inspector General (OIG) of the United States Department of Justice (DOJ), which plaintiff continues to cite on appeal.  *See* OIG, DOJ, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (2019) (the "OIG Report").[2]  All allegations are assumed to be true, even if they are not.

---

[1] Individual defendants reserve the right to pursue all applicable grounds for dismissal in the event of a remand.

[2] https://perma.cc/78UD-HAHM.

2

### A.    Factual Background

Plaintiff has maintained relationships with "known Russian intelligence officer[s]" since at least 2009.  OIG Report at 61.[3]  In a 2013 FBI interview, plaintiff described one relationship as "a 'positive' for him"; plaintiff later acknowledged that efforts by that contact and others "to recruit [him] as an asset for gathering intelligence on behalf of Russia" led to those individuals' 2015 indictment "for conspiring to act in the United States as unregistered agents of the Russian Federation."  *Id.* at 62.

In 2016, the FBI became aware of Russian-sponsored "cyber intrusions" into election systems, Democratic-affiliated political organizations, and other targets.  *Id.* at 49-50.  That July, the FBI learned of a report that then-candidate Donald Trump's foreign policy team had "'received some kind of suggestion' from Russia" that Russia could assist the Trump team "with the anonymous release of information during the campaign that would be damaging to candidate Clinton and President Obama."  *Id.* at 50.  The FBI soon opened

---

[3] Plaintiff denies these relationships entailed any unlawful conduct.  Br.7.

"Operation Crossfire Hurricane" to investigate whether individuals affiliated with the Trump campaign conspired or otherwise coordinated with the Russian government. JA__[SAC] ¶ 5. Investigators identified plaintiff, "a volunteer member of an informal foreign policy advisory committee," JA__[SAC] ¶ 21, as one of just "three individuals … associated with the Trump campaign with either ties to Russia or a history of travel to Russia," OIG Report at 59. The FBI believed the available evidence amounted to "an articulable factual basis that [plaintiff] 'may wittingly or unwittingly be involved in activity on behalf of the Russian Federation which may constitute a federal crime or threat to national security.'" *Id.* at 60.

As part of its investigation, the FBI obtained four FISA warrants from the Foreign Intelligence Surveillance Court (FISC) to surveil plaintiff. JA__[SAC] ¶ 3. OIG later concluded that the FBI had a sufficient and proper "articulable factual basis" to investigate plaintiff, but that "factual misstatements and omissions" in the FISA applications, "taken together," "made it appear that the information supporting probable cause" that plaintiff was an agent of a foreign power "was stronger than was actually the case." OIG Report at iii, xiii.

4

Plaintiff asserts that the FBI had no basis at all to investigate him and that he was "targeted" only "because of his lawful association with" the Trump campaign. JA__[SAC] ¶ 2; *see* Br.7. Plaintiff's complaint alleges deficiencies in the investigation into plaintiff and the preparation of the FISA warrant applications.

The first FISA warrant application was submitted to the FISC on October 21, 2016. JA__[SAC] ¶ 95. This application relied on information obtained from a confidential source, Christopher Steele, that suggested troubling links between plaintiff and Russia, including "improper or unlawful communications or activities between [plaintiff] and two sanctioned Russians with close ties to Russian President Vladimir Putin." JA__[SAC] ¶ 74. The application acknowledged that an "identified U.S. person" had hired Steele for the "likely" purpose of "looking for information that could be used to discredit [Trump's] campaign." JA__[SAC] ¶ 92. Plaintiff alleges that the application was nonetheless misleading because it did not identify the precise source of the payments to Steele; did not disclose plaintiff's alleged prior status as an "operational contact" for the CIA; inaccurately asserted that Steele's past reporting had been "corroborated and used in criminal

proceedings"[4]; and did not warn the court of possible false reports of ties between Russian individuals and U.S. citizens. JA__[SAC] ¶¶ 92-93, 95, 179. The month after the FISC issued the first FISA warrant, the FBI severed its relationship with Steele. JA__[SAC] ¶ 104.

The second FISA warrant application was filed with the FISC on January 12, 2017. JA__[SAC] ¶ 111. Plaintiff alleges omissions in the second application, including its characterization of the FBI's relationship with Steele as "suspended" rather than "terminated," *id*.; insufficient detail about Steele's affiliations and reliability, JA__[SAC] ¶ 112; and the failure to disclose the purported speculation of some officials that Steele's primary sub-source "might well be a Russian intelligence officer," JA__[SAC] ¶ 113. Plaintiff also alleges that the second application failed to describe any intelligence gathered pursuant to the first FISA warrant. JA__[SAC] ¶ 114.

The third FISA application was submitted to the FISC on April 7, 2017. JA__[SAC] ¶ 122. Four days later, the *Washington Post* published an article, incorporated into the complaint, discussing the

---

[4] The complaint does not allege Brian Auten to have written either of the statements plaintiff now misleadingly attributes to him (Br.13).

6

investigation into plaintiff, including the FISA warrants.  JA__[SAC] ¶ 221; *see* Ellen Nakashima et al., *FBI Obtained FISA Warrant to Monitor Former Trump Advisor Carter Page,* Wash. Post (Apr. 11, 2017).[5]  Plaintiff alleges that some defendants "leaked information and records concerning [plaintiff], including but not limited to the existence of the FISA Warrants, the contents of the warrant applications, and the results of the Warrants" to media outlets.  JA__[SAC] ¶ 226.

Interviewed for the *Post* article, plaintiff stated: "This confirms all of my suspicions about unjustified, politically motivated government surveillance."  Nakashima et al., *supra.*  Plaintiff "compared surveillance of him[self] to the eavesdropping that the FBI and [DOJ] conducted against civil rights leader Martin Luther King Jr." *Id.*  The *Post* reported that the FBI and DOJ had obtained the warrants "after convincing a [FISC] judge that there was probable cause to believe [plaintiff] was acting as an agent of a foreign power, in this case Russia." *Id.*  The article surveyed undisputed facts that fueled suspicions about plaintiff's Russian ties, including his "effusive praise for Russian President Vladimir Putin"; his recent travel "to Moscow,

---

[5] https://perma.cc/X76V-CJRH.

7

where he delivered a speech harshly critical of the United States' policy toward Russia"; and how "Russian spy suspects had sought to use [plaintiff] as a source for information." *Id.* The article also detailed allegations about plaintiff's Russian connections from a partially verified report—by Steele, whom the article did not name—which plaintiff "dismissed" as "what he called 'the dodgy dossier' of false allegations." *Id.* Neither this article nor the other cited in the complaint "contains any mention of the fruits of [plaintiff's] surveillance." JA__[ECFNo.115at34].

The fourth and final warrant application was filed with the FISC on June 29, 2017. JA__[SAC] ¶ 133. Plaintiff alleges that this application again omitted that he had been an "operational contact" for the CIA. JA__[SAC] ¶ 131. Before executing the warrant, the Operation Crossfire team sought to clarify plaintiff's prior involvement with the CIA. JA__[SAC] ¶ 129. Defendant Kevin Clinesmith contacted the CIA for that purpose on June 15, and a CIA employee allegedly confirmed via email that plaintiff was a source by "direct[ing] Clinesmith's attention" to attachments "that CIA had previously provided to the FBI." JA__[SAC] ¶ 130. Clinesmith forwarded the

email and attachments—unaltered—to the FBI case agent and DOJ attorney responsible for drafting the renewal. OIG Report at 250-51. Clinesmith later told a different member of the team that the CIA confirmed plaintiff was a CIA "sub source," but "never a source." JA__[SAC] ¶ 131.

## B.    Procedural History

The OIG Report issued on December 9, 2019. JA__[SAC] ¶ 233. Plaintiff filed suit on November 27, 2020, and twice amended his complaint. JA__[ECFNo.115at9]. The operative complaint asserts four FISA claims against the individual defendants, one for each warrant application, as well as a *Bivens* claim based on the same factual allegations. The complaint alleges that plaintiff was injured by the surveillance and by the alleged harms to his reputation from the public revelation of that surveillance. *See, e.g.*, JA__[SAC] ¶¶ 254-55 (alleging "damage to [plaintiff's] reputation" and related "[e]conomic losses"); JA__[SAC] ¶¶ 262, 266, 270, 274 (FISA claims, each alleging harm resulting from plaintiff being "portrayed as a traitor to his country").

9

Defendants moved to dismiss the complaint.[6]  The district court did not adopt defendants' statute of limitations arguments at the pleading stage but deemed all the claims legally deficient and dismissed them.  JA__[ECFNo.115at11-54].

The district court dismissed plaintiff's "engages in" claims because "one who 'engage[s] in electronic surveillance' under §§ 1809(a) and 1810 is one who participates in *collecting* the target's communications using certain devices," not one who is "responsible for gaining approval to do so," and the complaint focuses exclusively on alleged efforts to obtain authorization for surveillance, with no allegations that any

---

[6] Each defendant has additional arguments regarding the implausibility of plaintiff's allegations, even under the interpretation of the statute plaintiff adopts.  For example:  James Comey was an official who certified under FISA the legitimate purpose but had no role in collecting or verifying the facts supporting any of the applications.  Plaintiff has not alleged that Andrew McCabe drafted any warrant application or conducted any surveillance.  With respect to Clinesmith, see *supra* at 8-9.  There are no allegations that Peter Strzok had any role in the warrant-preparation process or the surveillance of plaintiff.  The limited allegations relating to Lisa Page describe no role in preparing any warrant application, let alone surveilling plaintiff.  And plaintiff's allegations demonstrate that Joe Pientka and Stephen Somma were not involved in multiple warrant applications and lacked the requisite intent to engage in unlawful surveillance.

10

defendant performed actual surveillance.  JA__[ECFNo.115at26-27].[7]
Because Congress passed FISA "to counter the abuses of *warrantless*
surveillance," section 1809(a) "applies to agents who conduct
unauthorized surveillance … without a court order[,] rather than those
who help obtain faulty warrants."  JA__[ECFNo.115at28].

The district court also dismissed plaintiff's "use-or-disclose"
claims, which rest on allegations that "are conclusory and thus do not
state an actionable … claim."  JA__[ECFNo.115at33].  Plaintiff
moreover failed to state which defendants "used and disclosed FISA-
acquired information," and his allegations were "vague in other
respects: they do not explain what information was leaked, to whom it
was leaked, or when or how it was leaked."  JA__[ECFNo.115at33-34].

Plaintiff filed a motion to alter or amend the judgment and for
relief from the judgment.  JA__[ECFNo.127].  As relevant here, plaintiff
sought "discovery to enable him 'to learn sufficient details to plead the
relevant causes of action.'"  JA__[ECFNo.127at7] (quoting
JA__[ECFNo.119-1at13]).  The district court denied the motion: plaintiff

---

[7] The court also dismissed plaintiff's aiding-and-abetting claim on
the basis that FISA's civil cause of action does not contemplate
secondary liability.  JA__[ECFNo.115at26-27].

had "not provided grounds for this relief under Rule 59(e) or Rule 60(b)" and was "not entitled to conduct a fishing expedition to discover new potential claims he may bring against the defendants." JA__[ECFNo.127at7-8]. Addressing plaintiff's argument that he needed discovery to "learn the identities of the John Does" named in the complaint, the district court reasoned that the "complaint does not detail any alleged wrongdoing by the John Does"; the complaint "makes no attempt" to link its allegation "that unknown individuals engaged in surveillance" of plaintiff "to any cause of action." JA__[ECFNo.127at8-9].

## SUMMARY OF ARGUMENT

I. Plaintiff fails to state a valid FISA claim under 50 U.S.C. §§ 1809 and 1810.

A. Plaintiff does not allege that any defendant "engage[d] in electronic surveillance" within the meaning of section 1809(a)(1), in particular because he does not contend that any defendant *performed* surveillance. Plaintiff argues that the Court should expand the reach of the statute to cover a broader range of conduct, but the argument is forfeited: plaintiff did not advance his primary liability argument to the

12

district court, and his appeal abandons the argument about secondary liability that was his exclusive focus below.

Plaintiff's proposed interpretation lacks merit anyway. As the district court held, to "engage in" "the acquisition by an electronic, mechanical, or other surveillance device of the contents of any [qualifying] communication" is to participate in the *act of acquiring* the communications—not to apply for authorization to do so, to help prepare for the acquisition, or to receive or possess the information after it is acquired. JA__[ECFNo.115at26]. Plaintiff never grapples with the full statutory phrase the district court carefully analyzed. And while he tries to interpret "engages in" and "electronic surveillance" separately, those arguments fail too. The plain meaning of each of those terms, as well as the statute's definition of "electronic surveillance," unambiguously refer to the act of surveilling. FISA's history and purpose confirm as much.

B. Nor does plaintiff plausibly allege that any defendant "use[d]" or "disclose[d]" information obtained by unauthorized electronic surveillance in violation of section 1809(a)(2). The district court correctly dismissed plaintiff's "use" allegations as generalized, vague,

and conclusory—and self-contradictory—and plaintiff doesn't make them any more specific or plausible on appeal.

Plaintiff has never alleged that any information was obtained by surveillance and later revealed, as is necessary for a "disclose" claim. Plaintiff now argues that the mere existence of the warrants targeting him qualifies as "contents" of a communication, but the argument was not preserved, and is irrelevant anyway—section 1809(a)(2)'s prohibition on disclosure does not refer to "contents."  Even if it did, the "contents" plaintiff complains about were not *obtained* by electronic surveillance, as they would have to be for a "disclose" claim.

II. This Court may also affirm in full on the alternative ground that plaintiff's claims are untimely, whichever limitations period applies.  The district court ruled that plaintiff's claims did not accrue until he knew all the details of the alleged deficiencies in the warrant applications and application process.  But the federal discovery rule holds that a claim accrues when a plaintiff learns of the *injury*—here, the surveillance—not the full details of how that injury occurred.  That is why analogous Title III claims accrue when the plaintiff has a reasonable opportunity to discover the unauthorized wiretapping, not

14

when the plaintiff learns precisely how or why the wiretapping was unauthorized.  Here, the *Washington Post* article publicized the warrants more than three years before this suit.  Plaintiff publicly stated at that time that the article confirmed his suspicions of "unjustified" surveillance, and he specifically decried Steele's "dodgy dossier" as an improper basis for that surveillance—the exact theory of illegality he advances now.  Even if plaintiff needed to know more than the fact of his surveillance for his claims to accrue, his own complaint makes clear that he did.

## STANDARD OF REVIEW

This Court "review[s] the district court's dismissal *de novo* and may affirm its judgment on any basis supported by the record."  *Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1236 (D.C. Cir. 2018).[8]

## ARGUMENT

### I.    Plaintiff Fails To State A Valid FISA Claim.

FISA creates a civil cause of action, 50 U.S.C. § 1810, for violations of its criminal provision, which provides:

---

[8] Unless otherwise indicated, all alterations, internal citations, and quotations are omitted and emphasis added.

15

A person is guilty of an offense if he intentionally—

(1) engages in electronic surveillance under color of law except as authorized by this chapter [or others];

(2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter [or others].

*Id.* § 1809(a).  The district court correctly dismissed plaintiff's FISA claims because the complaint does not adequately allege that any individual defendant either engaged in unauthorized surveillance or used or disclosed information obtained by unauthorized surveillance.

### A.    Plaintiff Does Not Adequately Allege That Any Defendant "Engaged In" Electronic Surveillance Within The Meaning Of The Statute.

The district court thoroughly analyzed the statute to conclude that "one who 'engage[s] in electronic surveillance' under §§ 1809(a) and 1810 is one who participates in *collecting* the target's communications using certain devices."  JA__[ECFNo.115at26].  The court properly "start[ed], as it must, with the text," and reasoned that FISA's "text, structure, and context point toward" that reading in unison.  JA__[ECFNo.115at21-22].  Because plaintiff undisputedly "does not allege that any of the individual defendants personally conducted the

16

surveillance or acquired or collected his communications"—and does not allege that several defendants were even substantively involved with the warrant *applications*—the district court correctly dismissed his FISA claims.  JA__[ECFNo.115at28-29]; *see also* JA__[ECFNo.115at30] ("Absent from the complaint is any claim that these four defendants participated in drafting or substantively reviewing the faulty applications themselves, let alone that they performed the FISA surveillance and acquired [plaintiff's] communications.").

Plaintiff's contrary arguments are newly raised on appeal and thus waived.  In any event, plaintiff cannot expand statutory liability beyond what statutory text supports.  Plaintiff has no response to the district court's properly integrated analysis of the statute.  *See* JA__[ECFNo.115at22] ("The breadth of the phrase 'engage in electronic surveillance' depends on the term 'acquisition.'").  Reading the relevant statutory proscription of conduct and definitional provision together, their meaning is clear:  "One who engages in acquisition is one who takes part in the act of obtaining communications by using a device." *Id.*  Seeking two bites at the atextual apple, plaintiff separately assesses the terms "engages in"—used in the regulation of conduct—

17

and "acquisition"—used in the definition of "electronic surveillance"—in isolation.  Br.37-52 ("engages in"); Br.52-57 ("acquisition").  Those improperly segmented arguments fail even on their own terms.

### 1. Plaintiff forfeited his new appellate arguments in the district court and has abandoned his earlier (meritless) aiding-and-abetting argument.

Plaintiff makes all of his arguments about the interpretation of section 1809(a)(1) for the first time on appeal.  In the district court, plaintiff did *not* argue that FISA's text sweeps beyond personal participation in surveillance.  Plaintiff effectively conceded the narrow scope of primary liability and focused on secondary liability instead:

> Criminal liability under § 1809 extends not only to principals but also to persons who aid or abet the offense. *See* 18 U.S.C. § 2 …  The Individual Defendants wholly ignore this provision and the mainsprings of 1809(a)'s reach by wrongfully arguing the [complaint] does not state FISA claims against them because it does not allege that they each, *personally*, engaged in electronic surveillance of [plaintiff] or disclosed or used information obtained from the surveillance.  The simple rejoinder to this argument is that there is no need for Plaintiff to do so in order to prove the Individual Defendants are liable, pursuant to 50 U.S.C. 1809 and 18 U.S.C. § 2, for having violating FISA's criminal provisions.

JA__[ECFNo.98at16]; *see also* JA__[ECFNo.98at18] (claiming that defendants are "all liable *qua* principals pursuant to the operation of 18

18

U.S.C. § 2, regardless of whether each individually personally conducted any specific portion or the entirety of the illegal conduct"). Plaintiff argued that personal participation in conducting surveillance did not matter because of aiding-and-abetting liability, not because the statute imposed primary liability for a broader range of conduct.

Plaintiff made no arguments in the district court about the scope of the phrase "engages in," and did not even *mention* the statutory definition of "electronic surveillance."  Plaintiff has therefore forfeited his interpretive arguments about the scope of § 1809(a)(1).  *See, e.g.*, *Petit v. U.S. Dep't of Educ.*, 675 F.3d 769, 782 (D.C. Cir. 2012) (interpretive position not raised below was forfeited).

While plaintiff asserted arguments about secondary liability below, he has now abandoned them on appeal.  Plaintiff's opening brief references aiding-and-abetting liability only in passing in a footnote, which asserts that defendants "would certainly be liable as aiders and abettors" without venturing any error in the district court's reasoning. Br.45 n.1.  Because plaintiff "has failed to present more than cursory argument, in a footnote and without case citations, that this was error," he has not preserved his "underdeveloped argument[]" for this Court's

review.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 593 (D.C. Cir. 2016).[9]

Plaintiff's aiding-and-abetting argument would fail even if it were preserved:  "[W]hen Congress is silent as to aiding and abetting liability, it has unambiguously foreclosed that theory of recovery." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 279 (D.C. Cir. 2018); *see also Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *11 (D.D.C. Mar. 31, 2020) (finding no express statutory authorization, and thus no claim, for secondary liability under Stored Communications Act), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021).  Congress's express reference to aiding and abetting elsewhere in FISA, *see* 50 U.S.C. § 1801(b)(1)(E), confirms its intent to limit FISA's private cause of action to primary liability. *See, e.g.*, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("The contrast between the language used in the two standards … indicate[s] that Congress intended the two standards to differ.").

---

[9] Plaintiff's passing reference to vicarious liability in other legal contexts, Br.41, is insufficient to raise an argument for liability on that distinct theory—which plaintiff also failed to preserve below.

20

>    **2.    The district court correctly interpreted**
>    **"engaging in" surveillance to mean conducting**
>    **surveillance, not applying for authorization for it**
>    **or participating in any related activities.**

Plaintiff's statutory arguments would fail even if preserved.

According to plaintiff, "engag[ing] in electronic surveillance" "covers far

more than the operative acts of planting a bug or conducting a search."

Br.37.  But FISA makes clear that only those types of acts qualify as

"engag[ing] in electronic surveillance."  50 U.S.C. § 1809(a)(1).  As the

district court recognized, the statute narrowly defines "electronic

surveillance" as "the acquisition *by an electronic, mechanical, or other*

*surveillance device* of the contents of any wire or radio communication."

*Id.* § 1801(f)(1).

Plaintiff tries to counter that plain meaning by focusing on

"engages in" in the abstract.  But stripping those words of context still

cannot expand the statute as plaintiff urges.  Br.37.  The plain meaning

of "engages in" does not include preparatory or prerequisite acts.  "To

determine the ordinary meaning of a legal term," courts "may look to

contemporaneous dictionaries."  *Greenbaum v. Islamic Republic of Iran*,

67 F.4th 428, 432 (D.C. Cir. 2023).  The district court consulted a 1977

dictionary to understand the plain meaning of "engages in" that

21

controlled when Congress enacted FISA a year later: "'to take part' or 'participate.'"  JA__[ECFNo.115at21] (quoting *Engage*, *Merriam-Webster's New Collegiate Dictionary* (1977)); *accord Engage*, *Black's Law Dictionary* (5th ed. 1979) ("To employ or involve one's self; to take part in; to embark on."); *see also United States v. Koyomejian*, 946 F.2d 1450, 1459 n.16 (9th Cir. 1991) (section "1809(a) is best understood as subjecting to criminal liability anyone who *performs* electronic surveillance" without authorization).  Plaintiff's own "complaint recognizes th[e] distinction" between engaging in surveillance and preparing for or seeking authorization for it.  JA__[ECFNo.115at24].[10]

FISA separately includes "preparation" language when Congress intended to capture both those who "engage in" certain acts and those who help prepare to engage in them.  *See* JA__[ECFNo.115at23].  The term "engages in" or variants appear in ten of FISA's definitional provisions, seven of which have featured in the statute since its 1978

---

[10] *See, e.g.*,  JA__[SAC] ¶ 3 (describing "the *submission* of four false and misleading warrant applications to *engage in* electronic surveillance"); JA__[SAC] ¶ 140 ("[h]aving unlawfully *obtained* the four warrants," the defendants "used the warrants to *engage in* surveillance of [plaintiff] in the manner and for the time periods prescribed in the four warrants").

enactment.[11] Two of those provisions define terms to include both those who "engage[] in" certain activities and those who aid "in preparation therefor." *See* 50 U.S.C. § 1801(a)(4) (defining "foreign power" to reach "a group engaged in international terrorism or activities in preparation therefor"); *id.* § 1801(b)(2)(C) (defining "agent of a foreign power" to reach someone who "knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power"). The other five provisions define terms to include only those who "engage in" specified activities. *See* 50 U.S.C. §§ 1801(b)(1)(B), (b)(2)(A), (b)(2)(B), (b)(2)(E), (l).

The "cardinal principle of interpretation [is] that courts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014). When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion."

---

[11] *See* Pub. L. No. 110-261 § 110, 122 Stat. 2436, 2465-66 (July 10, 2008) (adding what are now subsections 1801(a)(7) and 1801(b)(1)(D)-(E)); Pub. L. No. 114-23 § 703, 129 Stat. 268, 300 (June 2, 2015) (amending subsection 1801(b)(1)(E) to reflect its current form).

*Russello v. United States*, 464 U.S. 16, 23 (1983).  Congress used the terms "engages in" *and* "in preparation therefor" when it intended provisions of FISA to reach both participation in and preparation for an activity.  Section 1809(a)(1) uses only "engages in"—and thus reaches only direct participation.[12]

Plaintiff's contrary arguments fail.  Though plaintiff asserts that the district court weighed a "definition in isolation," Br.38, in reality the court considered both the definition of "engage" *and* the term's meaning in the statutory context.  JA__[ECFNo.115at21] (analyzing "the meaning of the phrase 'engage[] in electronic surveillance'").  *Plaintiff* focuses on "engages in" in isolation from "surveillance," and his context-free analysis rests on unhelpful authorities, including competing definitions from dictionaries published decades after 1978, Br.38.

Plaintiff does not advance his arguments by citing cases that casually use "engages in" in distinct contexts, like "engag[ing] in the

---

[12] Section 1801(b)(2)(B) similarly applies to one who, "pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other [unlawful] clandestine intelligence activities for or on behalf of such foreign power."  This textual distinction between "direct[ing]" and "engag[ing] in" rebuts plaintiff's contention that the words "engages in electronic surveillance" also reach "those who direct" others to conduct surveillance.  Br.37.

24

manufacture of coke," "logging activity," or "interstate commerce." Br.38-43. The district court's careful analysis of what it means to engage *in electronic surveillance* relied on contemporaneous cases from that specific context showing that courts did not understand "surveillance" to include preparatory acts. JA__[ECFNo.115at22-23]. Plaintiff's references to "the sale of liquor" and "construction," Br.41-42, are similarly unhelpful, because the activity in question here— electronic surveillance—is narrowly defined as the discrete act of using a "device" to "acquire" communications. 50 U.S.C. § 1801(f)(1). Even without this clear definition, plaintiff's cases do not support his interpretation of "engaging in": applying for a liquor license is not "engag[ing] in the sale of intoxicating drinks," and applying for a fishing license is not "engag[ing] in … taking fish." Br.39. (Neither, for that matter, is eating a fish. *Cf.* Br.52-57 (conflating receiving information with "engaging in electronic surveillance").)

Plaintiff next dismisses the "preparatory" language in FISA's definition of "agent of a foreign power" as merely "redundant drafting," which he claims often happens in definitional sections of statutes. Br.45-48. But presumptions against surplusage apply equally to

definitional sections. *See, e.g.*, *Dean v. United States*, 556 U.S. 568, 572-73 (2009) (analyzing variations in definitional section of statute to interpret different section regulating conduct).

Moreover, FISA's statutory history makes plain that the distinctions here are intentional, and that Congress used "preparation" language throughout FISA when it intended to capture preparatory conduct. *See United States v. Hansen*, 599 U.S. 762, 775 (2023) ("When words have several plausible definitions, context differentiates among them. … Statutory history is an important part of this context."). A congressional conference committee finalized subsection 1801(a)(4)'s definition of "foreign power." *See* H.R. Rep. No. 95-1720, at 19 (1978) (Conf. Rep.). "[W]ith respect to terrorist groups," the Senate bill defined "foreign power" to mean simply "a foreign-based terrorist group," while the House defined it "to include a group engaged in international terrorism or activities in preparation therefor." *Id.* The committee consciously "adopt[ed] the House definition," because "surveillance of a group engaged in preparation for international terrorism may be necessary." *Id.* Congress included both "engaged in" and "preparation" in that definition because it intended to reach both kinds of acts—and

26

in doing so codified its understanding that those terms mean different things.

Legislative history also refutes plaintiff's contention that FISA's distinct references to engaging and preparing were inadvertent or redundant. Early in FISA's drafting process, the Senate introduced (in the same bill) three definitions of "agent of a foreign power," one of which used "preparation" language: someone who "knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power," 50 U.S.C. § 1801(b)(2)(C); *see* S. Rep. No. 95-701, at 19-30 (1978). The Senate explained that "preparation" in that subsection "could reasonably be interpreted to cover, for example, providing the personnel, training, funding, or other means for the commission of acts of terrorism," *id.* at 26-27—direct analogues to the prerequisite conduct that plaintiff would smuggle into "engaged in." Significantly, this same Senate bill did *not* use "preparation" language in its other two definitions of "agent of a foreign power," in subsections 1801(b)(2)(A) and (b)(2)(B), which cover those who "engage[] in" "clandestine intelligence gathering activities" or "other clandestine intelligence activities," full stop. *Id.* at 21-26.

27

Congress drafted deliberately when including "preparation" in just one of these three consecutive subsections, further confirming that Congress understood "engaged in" and "preparation" to cover different kinds of acts, and used both terms when it intended to cover both kinds.

Plaintiff argues that purportedly "redundant or overlapping" language supports his interpretation. Br.47-48. But the language added to subsections 1801(b)(1)(D) and (E) in 2008, *see* 122 Stat. at 2465-66, sheds no light on Congress's intent in drafting the relevant provisions thirty years earlier. The use of both "explosive" and "incendiary" devices and both "biological agent[s]" and "toxin[s]" in section 1801(p), Br.48, likewise shows no tolerance for redundancy: a device can explode without causing fire; many biological agents are not toxins. Nor does plaintiff explain how section 1801(e)(2)(A) is redundant in referring to "the national defense or the security of the United States," *id.*, but even if it were, that dissimilar example would not prove Congress lacked purpose when it used only "engaged in" in some sections of FISA while adding "in preparation" in others.

Plaintiff's own arguments from the statute only undermine his interpretation. First, by imposing liability on one who "*engages in*

28

*electronic surveillance* … except as authorized by this chapter … or any express statutory authorization that is an additional exclusive means for *conducting electronic surveillance* under section 1812 of this title," section 1809(a)(1) does not distinguish "engaging in" surveillance from "conducting" surveillance, Br.48-49—just the opposite. By identifying two ways "engag[ing] in electronic surveillance" may be "authorized," one "by this chapter" and one by "any express statutory authorization that is an *additional* exclusive means for *conducting* electronic surveillance," section 1809(a) *equates* "engag[ing] in" surveillance with "conducting" surveillance.

Second, plaintiff points to section 1827(a), which imposes liability on one who "executes a physical search within the United States except as authorized by statute." Plaintiff contends that this provision's use of "executes" indicates that section 1809(a)'s "engages in" describes "a *broader* scope" of conduct. Br.50. Plaintiff ignores a likelier explanation: Congress followed the common practice of referring to someone "executing a search," but not "executing surveillance." *Compare, e.g.*, *Richards v. Wisconsin*, 520 U.S. 385, 391-92 (1997) ("the manner in which a search was executed"), *with United States v. Chavez*,

29

416 U.S. 562, 580 (1974) ("when authority to engage in wiretapping or electronic surveillance is sought").  Plaintiff must resort to obscure counterexamples because neither the Supreme Court nor any Justice has ever referred to someone "executing surveillance."  *Cf., e.g.*, *Bailey v. United States*, 568 U.S. 186, 190 (2013) ("As the search unit began preparations for executing the warrant, two officers … were conducting surveillance in an unmarked car outside the residence."); *id.* at 197 ("[H]e was not a threat to the proper execution of the search.").  Because to "execute a search" is natural usage and to "execute surveillance" is not, plaintiff's argument about the different words used in 1827(a) and 1809(a) fails.

As the district court concluded, the narrow scope of liability in connection with physical searches supports a similarly narrow scope of liability for electronic searches.  JA__[ECFNo.115at25].  "Engages in" goes with "surveillance" as "executes" goes with "search," making it more reasonable to read those sections as imposing parallel liability for direct participation in each activity.  Plaintiff offers no reason why

30

Congress would establish narrower liability for physical searches than for electronic ones.[13]

### 3. Receiving or possessing information after it is collected does not amount to "engaging in electronic surveillance."

Having failed to establish that "engaging in" electronic surveillance includes preparatory acts, plaintiff next tries to expand the scope of that term in the other direction by arguing that section 1809(a)(1) reaches anyone who "'obtained communications pursuant to' unauthorized electronic surveillance, and hence directly 'acquired' such information." Br.52. That is, plaintiff contends the statute imposes liability on anyone who *possesses* information previously collected through electronic surveillance, however remote the connection between the possessor and collector. *See, e.g.*, Br.56 ("in possession of—that is,

---

[13] The district court's comparison to the Wiretap Act, which creates a cause of action against both those who "intercept" and those who "procure any other person to intercept," further "support[s] the conclusion that FISA covers only acquisition, not the procurement of others to acquire." JA__[ECFNo.115at26]. Plaintiff objects that the Wiretap Act uses "intercept" while FISA uses "engages in." Br.51n.4. But that's the wrong comparison: the district court properly compared the "nearly identical" definitions of "intercept" in the Wiretap Act and *"electronic surveillance"* in FISA. JA__[ECFNo.115at26].

31

acquired").  But while plaintiff conflates the acquisition of information

with its subsequent possession or receipt, FISA does not.

> As relevant here, FISA defines "electronic surveillance" to mean:

> the acquisition by an electronic, mechanical, or other
> surveillance device of the contents of any wire or radio
> communication sent by or intended to be received by a
> particular, known United States person who is in the United
> States, if the contents are acquired by intentionally
> targeting that United States person, under circumstances in
> which a person has a reasonable expectation of privacy and a
> warrant would be required for law enforcement purposes.

50 U.S.C. § 1801(f)(1).  Reading this definition in statutory context—*i.e.*,

plugged into the phrase "engages in electronic surveillance"—supports

the district court's interpretation.  Section 1801(f)(1) explains that

"electronic surveillance" is limited to acquiring communications *using a*

*specific method*: with "an electronic, mechanical, or other surveillance

device."  One who obtains a communication through a different

method—such as receiving a report that reproduces the contents of that

communication—has not engaged in "electronic surveillance," as FISA

defines it.  In other words, acquiring a communication using a

surveillance device cannot mean receiving a communication that was

*already acquired* with that surveillance device.  *See*

JA__[ECFNo.115at21-22].

32

Plaintiff pretends that the district court limited its analysis to a dictionary, Br.53, but the court in fact consulted a contemporaneous dictionary to assess the ordinary meaning of "acquisition" *and* then considered the statutory context to confirm that the narrow ordinary meaning comported with the statute's usage.  JA__[ECFNo.115at22] ("That 'acquisition' is followed in the statute by the term 'by an electronic, mechanical, or other surveillance device' further indicates that its statutory meaning is tethered to the actual collection of the communications by specified means, as opposed to the pre-collection investigation or authorization stage.").  Plaintiff, by contrast, must analyze section 1809(a) in bits and pieces because he cannot offer a plausible alternative reading of the provision as a whole.  Br.52-57 (never addressing what "acquisition" means when plugged into the phrase "engages in electronic surveillance").

Even accepting plaintiff's faulty framing, his argument for a broader reading of "acquisition" fails.  Contemporaneous dictionaries confirm that "the ordinary meaning of 'acquisition' is 'the act of acquiring.'"  JA__[ECFNo.115at22] (quoting *Acquisition*, *Merriam-Webster's New Collegiate Dictionary* (1977)); *accord Acquisition*, *Black's*

33

*Law Dictionary* (5th ed. 1979) ("The act of becoming the owner of certain property; the act by which one acquires or procures the property in anything."). Plaintiff claims that a different dictionary from 1989 supports his preferred "'result reading'—that the acquisition of information also covers the act of resultantly coming into possession or knowledge of that information," but he never provides that definition. Br.54.

Plaintiff instead pivots to a grammar lesson, claiming that "nominalizations" are ambiguous and may support either his preferred "result reading" or an "event reading." Br.53. Plaintiff ignores that FISA's definition of "electronic surveillance" uses both a nominalization ("acquisition") and past participle ("are acquired"), which together produce the "event reading" he resists. *See* 50 U.S.C. § 1801(f)(1) ("the acquisition … of the contents of any [qualifying] communication … if the contents are acquired by intentionally targeting that United States person"). The present-tense "are" in "are acquired" confirms that "acquisition" refers to the act of acquiring the contents in the first instance, *during* the "targeting" of the surveilled person. If plaintiff's broader reading were correct, the definition would read, "the

34

acquisition … of the contents … if the contents are *or were* acquired by intentionally targeting" the surveilled individual.

Uses of "acquisition" elsewhere in FISA confirm this understanding of its meaning in section 1801(f)(1). As the district court observed, FISA's "minimization procedures" "specifically differentiate between the 'acquisition,' 'retention,' and 'dissemination' of information." JA__[ECFNo.115at24] (quoting 50 U.S.C. § 1801(h)(1)); *see* 50 U.S.C. §§ 1804(a)(4), 1805(c)(2)(A). That differentiation leaves no doubt that "'acquisition' refers to the actual gathering of information." JA__[ECFNo.115at24] (citing *In re Sealed Case*, 310 F.3d 717, 731 (FISA Ct. Rev. 2002)). "Acquisition thus refers to the information collection phase of FISA," JA__[ECFNo.115at25]—throughout the statute. It does not cover the subsequent "dissemination" of that information. *See id.* (describing minimization of dissemination as "restrict[ing]" collected information "to those officials with a need for such information").

Plaintiff does not respond to the district court's analysis of this distinction in section 1801(h)(1). He instead points to a different provision that draws *the same distinction* between "the acquisition,

35

retention, and dissemination of covered communications." 50 U.S.C.
§ 1813(b)(3)(A). Ignoring the distinction there too, plaintiff focuses on
how this provision instructs that minimization procedures "shall apply
to any intelligence collection activity not otherwise authorized by court
order … subpoena, or similar legal process that is reasonably
anticipated to result in the acquisition of a covered communication." *Id.*
But "acquisition" means the same thing here as everywhere else:
minimization procedures apply to any intelligence *collection activities*
that culminate in the actual interception of a communication.
Plaintiff's citation of section 1806(a) similarly disproves his point: by
specifying how "[i]nformation acquired from an electronic surveillance
conducted pursuant to this subchapter … may be used and disclosed,"
that provision likewise equates acquiring information with conducting
surveillance. Plaintiff has not found a single statutory use of any form
of "to acquire" that refers to anything other than the act of conducting
surveillance. All he cites is a 2011 intelligence manual, Br.55-56, which
sheds no light on Congress's intent in 1978.

FISA's specific definition of "electronic surveillance" thus refers to
the discrete act of surveilling. The commonly understood meaning of

36

the phrase "electronic surveillance" does too: the district court collected cases confirming the contemporaneous understanding of this term "to refer to the specific act of collecting information by listening to or watching someone." JA__[ECFNo.115at22-23]. Plaintiff does not counter that evidence of common usage and understanding. Uses of "electronic surveillance" in FISA beyond section 1809(a) further confirm that it means the collection of information. The Act requires that a warrant "application must state 'the period of time for which the electronic surveillance is required to be maintained,'" JA__[ECFNo.115at24] (quoting 50 U.S.C. § 1804 (a)(9)), which can only refer to the actual collection of the information itself. The "statutory defense for a § 1809(a) violation" "refers to 'electronic surveillance [that] was authorized by and conducted pursuant to a search warrant or court order,'" *id.* (quoting 50 U.S.C. § 1809 (b)), which again makes sense only if "electronic surveillance" means the collection itself.

Plaintiff fails to rebut a single analytical step leading to the district court's conclusion that "acquisition" "refers to the information collection phase of FISA." JA__[ECFNo.115at25]. He cannot find any support in the statute for his implausibly broad reading. If someone

37

"'acquired' information collected through electronic surveillance" any time "they came into possession" of such information, Br.56, FISA liability would be boundless.  The district court understood that his unsupported interpretation would have such untenable consequences.  *See* JA__[ECFNo.115at22].  And the district court put it mildly: under plaintiff's theory, broadcasting information obtained through unauthorized surveillance would make the whole audience liable.  That is not a plausible reading of a statutory provision imposing liability on one who "engages in electronic surveillance under color of law except as authorized."  50 U.S.C. § 1809(a)(1).

Finally, because the scope of civil FISA liability is determined by the statute's criminal provision, the rule of lenity applies when interpreting the scope of civil liability—further supporting the district court's rejection of plaintiff's expansive reading of section 1809(a).  *See, e.g.*, *Crandon v. United States*, 494 U.S. 152, 158 (1990) ("[B]ecause the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage.").

38

### 4.   FISA's history and purpose confirm the district court's reading of its text.

Plaintiff eventually appeals to FISA's purpose writ large.  Br.57-61.  He contends that the district court's "narrow reading" of section 1809(a)(1) "would vitiate FISA's purpose of curbing abuses of civil liberties by the executive branch."  Br.57.  Arguments about purpose "cannot compensate for the lack of a statutory basis."  *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 171 (2007).  And there is no tension with the statute's purpose here anyway: Congress's choice of narrower language in section 1809(a)(1) comports with the statute's general purpose, and with Congress's particular reasons for including a civil cause of action.

Congress's primary purpose in enacting FISA was "to counter the abuses of *warrantless* surveillance."  JA__[ECFNo.115at28]; *see* JA__[ECFNo.115at27] ("FISA was enacted in 1978 to address the issue of warrantless surveillance in the national security context."); *United States v. Belfield*, 692 F.2d 141, 145 (D.C. Cir. 1982) (Congress enacted FISA in "[r]espon[se] to post-Watergate concerns about the Executive's use of warrantless electronic surveillance").[14]  The provisions at issue

---

[14] Plaintiff does not dispute this, though he offers his own error-ridden account of the statute's history.  For example, plaintiff

*Continued on next page.*

support that narrow purpose by focusing on warrantless surveillance itself, not deficiencies in the process of seeking authorization.  Section 1809(a)(1) "makes it a criminal offense … to intentionally engage in electronic surveillance under color of law except as specifically authorized," while section 1809(b) "provides an affirmative defense" for official surveillance "*pursuant to a search warrant or court order*."  H.R. Rep. No. 95-1283, at 96 (1978).  And Congress intended "that the civil liability of intelligence agents under [FISA] should coincide with the criminal liability."  H.R. Rep. No. 95-1720, at 34.  "This historical context helps explain why § 1809(a) applies to agents who conduct unauthorized surveillance—typically, that means without a court order—rather than those who help obtain faulty warrants."  JA__[ECFNo.115at28].

To the extent Congress had "broader concerns" than warrantless surveillance, *cf.* Br.58, they are targeted by statutory provisions other than sections 1809 and 1810.  For example, FISA provides that a

---

mistakenly attributes to Congress, Br.59, a statement presented by Mr. Steven B. Rosenfeld of the New York City Bar.  *See Foreign Intelligence Surveillance Act of 1978: Hearing on S. 1566 Before the Subcomm. on Intel. & the Rts. of Ams. of the S. Select Comm. on Intel.*, 95th Cong. 146-47 (1978).

criminal defendant may move to suppress not only the fruits of "surveillance [that] was not made in conformity with an order of authorization or approval," but also information that more broadly was "unlawfully acquired," 50 U.S.C. § 1806 (e)—which would reach "surveillance conducted pursuant to a warrant lacking in probable cause," JA__[ECFNo.115at28]. Plaintiff never explains why FISA's civil cause of action must be enlarged to effectuate aims that Congress chose to address in different ways—and plaintiff cannot deny that sections 1809 and 1810, as drafted and as construed by the district court, advance the statute's primary purpose.[15]

## B. Plaintiff Does Not Plausibly Allege That Any Defendant Used Or Disclosed Information Obtained By Electronic Surveillance In Violation Of FISA.

The district court was also correct to dismiss plaintiff's claims under sections 1809(a)(2) and 1810 because the complaint's "additional

---

[15] Plaintiff complains that a civil claim is difficult to plead under the statute as drafted, but that would not be true in cases following prosecutions under section 1809, or even cases alleging warrantless surveillance by John Does. Plaintiff's pleading failures are his own: he did not allege that "*any* of the individual defendants, *including the unknown John Doe defendants* … , took part in obtaining the surveillance information" without a warrant. JA__[ECFNo.115at32] (first emphasis in original).

allegations that the individual defendants used and disclosed the fruits of the allegedly unlawful surveillance in numerous ways, [JA__[SAC ¶¶ 229-230]], are conclusory and thus do not state an actionable use or disclosure claim."  JA__[ECFNo.115at33].

### 1.    The district court correctly concluded that plaintiff's generalized allegations do not give rise to a plausible "use or disclose" claim.

The district court correctly reasoned that plaintiff "cannot show that a defendant *intentionally* used or disclosed information obtained through unlawful surveillance, as required by 50 U.S.C. §§ 1809(a) and 1810, without providing any details about his or her individual actions." JA__[ECFNo.115at33].  The allegations in the complaint are also fatally vague—"they do not explain what information was leaked, to whom it was leaked, or when and how it was leaked"—and self-contradictory— plaintiff's "allegations that the surveillance produced 'no evidence at all' that he acted as a Russian agent undercuts his claim that its results were used to procure the renewal warrants."  JA__[ECFNo.115at34].

Aside from the media-leak allegations discussed *infra* at 48-51, the complaint's "use or disclose" allegations almost exclusively boil down to two (of 311) paragraphs:

> The Defendants unlawfully obtained, disclosed, and used information and records regarding [plaintiff], including, but not limited to, the information contained in the warrant applications, the applications themselves and the results of the surveillance on him in ways known and unknown to him due to the secrecy of the FISA and investigative processes. These ways included, but are not limited to: leaks to the media, obtaining each subsequent renewal warrant, obtaining additional surveillance and investigative information without probable cause[.]

JA__[SAC] ¶ 229; *see also* JA__[SAC] ¶ 230 (similar, "[o]n information and belief").  These allegations could hardly be more conclusory: plaintiff does not specifically allege which defendant did what, or what information any defendant used or disclosed.  Plaintiff names every person and act he can think of, but "he does not allege that any particular defendant took any of these actions."  JA__[ECFNo.115at33].

Plaintiff's allegations do not get any more specific or plausible on appeal.  Plaintiff insists that he has alleged each defendant's intentional use of information known to be obtained from unauthorized surveillance "[b]y virtue of their participation in Crossfire Hurricane" alone.  Br.73.  That merely restates the conclusion.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff purports to get more specific by string citing

paragraphs related to various investigative acts, Br.71-73, but he fails to specify any defendant's *use* of any particular FISA-obtained information.  On that front, his allegations "do not permit the court to infer more than the mere possibility of misconduct."  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009).

Plaintiff also makes appellate arguments that improperly contradict the complaint.  *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994).  For example, plaintiff asks the Court to accept that the "surveillance would 'continue to produce' information on" him. Br.65 (quoting JA__[SAC] ¶ 114).  But plaintiff's complaint suggested that the earlier warrants did *not* produce any such information: "Notably, the application did not outline any foreign intelligence information that had been gathered during the first three months.  Instead, the application contained the *misleading conclusory statement* that the requested warrant would 'continue to produce foreign intelligence information.'"  JA__[SAC] ¶ 114; *see also* JA__[SAC] ¶ 115, JA__[SAC] ¶ 123, JA__[SAC] ¶ 136 (similar allegations).  The district court thus properly concluded that plaintiff's "allegations that the surveillance produced 'no evidence at all' that he acted as a Russian

agent undercuts his claim that its results were used to procure the renewal warrants." JA__[ECFNo.115at34]. Plaintiff responds that "FISA proscribes the use of *any* information obtained by unauthorized surveillance—not just information that would prejudice the target of surveillance." Br.67. Whatever FISA proscribes, it is factually contradictory to allege both that the surveillance was fruitless and that defendants used its fruits.

Attempting to shield his own pleading deficiencies, plaintiff argues that the district court should have scoured every document mentioned in the complaint to find the necessary specificity for his allegations. Br.64. Even the most specific references to purportedly incorporated documents gave the district court no rudder. *See, e.g.*, JA__[SAC] ¶ 45 (referencing alleged admissions in "letters includ[ing] but … not limited to" three neither attached nor linked); JA__[SAC] ¶ 231 (alleging concessions "in several filings," listing four "FISC Docket Nos." without specifying which filings). The issue is not that "the district court erred in refusing to assume the truth of [plaintiff's] well-supported allegation" of improper use, Br.68; the issue is that plaintiff asserted unsupported legal conclusions and left it to the

district court to hunt for alleged facts.  *See, e.g.*, *Nichols v. Vilsack*, 2015 WL 9581799, at \*13 (D.D.C. Dec. 30, 2015); *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017) (incorporation by reference "does not permit vague, general references to documents outside the complaint in place of specific allegations").

Even if any surveillance-obtained information appeared in renewal applications or any other document mentioned in the complaint, the complaint would still fatally lack factual allegations that any individual defendant "used" that information.  The district court properly reasoned that "a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 … by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." JA__[ECFNo.115at33] (quoting *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014)); *see also Est. of Mickens v. U.S. Bank Nat'l Ass'n*, 2021 WL 3418955, at \*4 (D.D.C. Aug. 5, 2021); *Arias v. Universal Music Grp.*, 640 F. Supp. 3d 84, 93 (D.D.C. 2022).

Plaintiff's contrary arguments fail.  "Pleading individualized violation is not necessary," according to plaintiff, "so long as the facts

alleged permit the court to reasonably infer *some* defendant's liability."
Br.70 (citing *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d
186, 196 (D.D.C. 2011); *United States ex rel. Westrick v. Second Chance
Body Armor, Inc.*, 685 F. Supp. 2d 129, 133 (D.D.C. 2010)).  Plaintiff's
authorities do not support his claim—they concern the requirements for
pleading false statements in False Claims Act cases, not the necessity of
individualized pleading in multidefendant cases.  *See Head*, 798 F.
Supp. 2d at 196-97; *Westrick*, 685 F. Supp. 2d at 133, 138-39.  *Feldman
v. CIA*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011), doesn't help plaintiff,
either; he points to the *Feldman* court's assessment of allegations of
*intent*, not particularization of allegations.  And the plaintiff in
*Feldman* plausibly alleged that defendants had "leak[ed] details of that
investigation in violation of the Privacy Act," *id.*, while plaintiff here,
again, has not plausibly alleged any information obtained by
surveillance that any defendant purportedly used or disclosed.

Last, plaintiff insists that "*collective* references to the Defendants'
using unauthorized FISA information" suffices, Br.73-74 (citing *N.Y.
Am. Water Co. v. Dow Chem. Co.*, 2020 WL 9427226, at *4 (E.D.N.Y.
Dec. 11, 2020)), but plaintiff is wrong again.  *Dow Chemical* confirms

47

that dismissal is warranted "based on improper group pleadings" for complaints that "do not involve identical allegations against named defendants." 2020 WL 9427226, at *4. Plaintiff does not allege identical facts against the individual defendants; rather, he "has alleged that each Individual Defendant, through conduct taken during Crossfire Hurricane, violated his rights under § 1809(a)(2)." Br.74. That is a paradigmatically conclusory legal assertion, not a well-pleaded factual allegation.

### 2. The district court correctly concluded the complaint fails to plausibly allege improper disclosure against Peter Strzok or Lisa Page.

While plaintiff on appeal narrows his media-leak theory to Peter Strzok and Lisa Page alone and the *Post* article specifically, Br.75-77, his new arguments cannot rescue his claim that defendants "disclose[d]" information "obtained … by [unauthorized] electronic surveillance." The district court correctly concluded that plaintiff's "bare allegation that the defendants disclosed the results of his surveillance to the media, without any further detail, does not raise his 'right to relief above the speculative level.'" JA__[ECFNo.115at34]. Importantly, the district court observed that no article cited in the complaint "contains

any mention of the fruits of [plaintiff]'s surveillance," and "the complaint does not cite any other media reports that contained FISA-obtained information, nor do the Strzok/Lisa Page text messages mention a plan to leak such information."  JA__[ECFNo.115at34].

Plaintiff's media-leak theory on appeal is that "[a]s defined by FISA, the 'contents' of information obtained by electronic surveillance, 'when used with respect to a communication, includes *any* information concerning the *identity* of the parties to such communication or the existence … of that communication,'" and the *Post* article identifies plaintiff "as a 'party' to FISA-targeted communications."  Br.76-77 (quoting 50 U.S.C. § 1801(n)).  This argument is both unpreserved and meritless.  Plaintiff did not even mention section 1801(n) in his district-court briefing, nor did he otherwise argue that his "identity" qualifies as surveillance-obtained information.  *See* JA__[ECFNo.98].  The argument is therefore waived.  *See, e.g.*, *Potter v. District of Columbia*, 558 F.3d 542, 549-50 (D.C. Cir. 2009).

It is also baseless.  Section 1809(a)(2) does not even use the word "contents," making the definition plaintiff cites irrelevant.  Section 1809(a)(2) applies when a defendant "discloses or uses information

obtained … by electronic surveillance."  Plaintiff does not (and could not) argue that defendants obtained his identity *by* electronic surveillance; rather, the complaint alleges that defendants knew his identity *before* any warrants were sought or surveillance conducted, and that the alleged media leaks related to the *existence* of the warrants. *See, e.g.*, JA__[SAC] ¶ 196.

Even if the definition of "contents" were relevant, it concerns "the identity of the parties" with "respect to [a] communication," 50 U.S.C. § 1801(n).  The *Post* article identified plaintiff as the target of the warrants, not as a party to any particular communication.  *See* Nakashima et al., *supra*.  Moreover, the complaint contains no allegation that Strzok or Lisa Page knew or had reason to know that his identity was obtained by *unauthorized* surveillance, as required by section 1809(a)(2).

Although the complaint alleges "[o]n information and belief" that "Strzok and Lisa Page collaborated to disclose protected information regarding [plaintiff] to the media," it fails to allege any specific information they purportedly disclosed.  JA__[SAC] ¶ 225; *see also* JA__[SAC] ¶ 226.  Allegations on "information and belief" must "be

50

accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021). There are no such facts here: plaintiff merely alleges that Strzok sent Lisa Page three text messages that reference news articles and a "media leak strategy," none of which "mention[s] a plan to leak [FISA-obtained] information." JA__[ECFNo.115at34].

For all these reasons, the district court correctly held that plaintiff's media-leak allegations fail to state a claim.

## II.   In The Alternative, Plaintiff's Claims Are Time Barred.

This Court may affirm "on any basis supported by the record." *Elec. Priv. Info. Ctr.*, 910 F.3d at 1236. Here, that includes the alternative ground that plaintiff's claims are untimely under any conceivably applicable limitations period. The district court erred in concluding otherwise. JA__[ECFNo.115at13-18].

As an initial matter, the court erred in applying D.C.'s residual three-year limitations period. JA__[ECFNo.115at14-15] (citing D.C. Code § 12-301(8)). Because the "gist" of plaintiff's injury is the surveillance and reputational harm that allegedly resulted, the Court should apply D.C.'s one-year limitations period for libel and invasion of

privacy.  D.C. Code § 12-301(4); *Doe v. DOJ*, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (applying section 12-301(4) where "damage to reputation [was] central to the plaintiff's [*Bivens*] claim").

Alternatively, the Court should apply a federal limitations period, because there are "analogous federal law[s] more in harmony with the objectives of" FISA, and relying on residual state limitations periods would "stymie the policies underlying" FISA.  *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995).  Appropriate analogues here are the two-year limitations periods of Title III and the Stored Communications Act, which work in tandem with FISA and share its objective of regulating surveillance.  *See Koyomejian*, 946 F.2d at 1456 (noting "strong evidence of Congress' intent to integrate" Title III and FISA "so as to provide a comprehensive regulatory framework for the conduct of electronic surveillance"); Gina Stevens & Charles Doyle, Cong. Rsch. Serv., *Privacy: An Overview of Federal Statutes Governing Wiretapping and Electronic Eavesdropping* 1-6 (Oct. 9, 2012)[16] (describing history of and relationship between three statutes).  The cross-border nature of electronic surveillance further commends "a uniform federal statute of

---

[16] https://perma.cc/F2HJ-EVQP.

limitations" for FISA claims; applying disparate state limitations periods raises "the danger of forum shopping" and inconsistent judgments. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 153-54 (1987) (applying federal limitations period for RICO claims for similar reasons).

Regardless, plaintiff's FISA claims are untimely even under the three-year limitations period applied below. JA__[ECFNo.98at65]. By plaintiff's own admissions, expressly incorporated into the complaint, his FISA claims accrued by April 11, 2017—more than three years before he filed suit. JA__[ECFNo.115at9.].

Under the federal discovery rule, "a cause of action accrues when the injured party discovers—or in the exercise of due diligence should have discovered—that it has been injured." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996). "Accrual does not wait until the injured party has access to or constructive knowledge of all the facts required to support its claim." *Id.* Thus, as the Supreme Court has "been at pains to explain … discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000).

53

Though appellate courts have not had occasion to apply the discovery rule to FISA claims, precedent on Title III claims is instructive. *See Koyomejian*, 946 F.2d at 1456. Title III prohibits unauthorized interception of communications and provides a statutory cause of action that accrues when "the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. §§ 2511, 2520(e). This Court and others have held that such claims—including against government and law enforcement officers—accrue once a "person had a reasonable opportunity to discover the wiretapping," *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 429 (D.C. Cir. 2002) (emphasis omitted); *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998); *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003)—not when he learns the details of why the surveillance allegedly was unauthorized.

Plaintiff's FISA claims thus accrued no later than April 11, 2017, when the *Washington Post*—in the article plaintiff concededly incorporated in the complaint, JA__[ECFNo.115at16n.7], and embraces on appeal, Br.76—"broke the story about the FISA Warrants targeting" plaintiff. JA__[SAC ¶ 221]. The article even quoted plaintiff's grievance that the surveillance was unlawful: "This confirms all of my

54

suspicions about unjustified, politically motivated government surveillance." Nakashima et al., *supra*. Even more specifically, plaintiff expressed his belief that the warrants were unjustified because they relied on the Steele report, which plaintiff characterized as a "'dodgy dossier' of false allegations." *Id.* This is the precise theory of unlawfulness underlying the complaint. *E.g.*, JA__[SAC] ¶¶ 9, 14, 74, 152, 258. The complaint also (accurately) alleges that months before the *Post* article, *Yahoo! News* reported that plaintiff had communicated with sanctioned Russian officials—and that plaintiff vehemently denied that report in a September 2016 letter to the FBI. JA__[SAC] ¶¶ 76, 81. By the time plaintiff learned of the warrants, then, he had already formed his belief that they were based on inaccurate information.

The district court's reasons for departing from the longstanding discovery-of-injury principle do not withstand scrutiny. "In a typical case," the court acknowledged, the *Post* article and plaintiff's response "might be enough for a claim to accrue." JA__[ECFNo.115at16]. But the court read *Klein v. City of Beverly Hills*, 865 F.3d 1276 (9th Cir. 2017), and *Hobson v. Wilson*, 737 F.2d 1 (D.C. Cir. 1984), as creating a special bright-line rule that "in the context of government searches and

surveillance," a claim does not accrue until a plaintiff obtains "access to the underlying affidavits" or the full "contents of the affidavits." JA__[ECFNo.115at17-18]. Neither case supports that extreme standard.

In *Klein*, the Ninth Circuit held a claim for judicial deception did not accrue until "the underlying affidavit" became "reasonably available." 865 F.3d at 1278-79. That claim "involve[s] false or misleading misrepresentations" in a warrant application, which "may not be readily apparent at the time of the search." *Id.* at 1279. The misrepresentations themselves are the "crux" of the claim, so the plaintiff must know something about them, beyond the search itself, to plead it. *See id.* (contrasting Fourth Amendment claims, where "the plaintiff is placed on constructive notice of the illegal conduct when the search and seizure takes place"). But plaintiff's FISA claims do not encompass judicial deception; the statute's text makes clear the "crux" of those claims is unauthorized "electronic surveillance" or improper use or disclosure of information obtained from it. 50 U.S.C. § 1809(a); JA__[SAC] ¶ 257. That kind of claim accrues upon knowledge of the purportedly unauthorized surveillance—as the Title III cases

56

demonstrate—and accrual does not wait for the plaintiff to obtain "knowledge of all the facts required to support [the] claim." *Sprint*, 76 F.3d at 1228.  Even if *Klein* required a FISA plaintiff to know something "more" than the fact of surveillance, JA__[ECFNo.115at16], plaintiff knew something more: he told the *Post* the surveillance was illegitimate because it was based on Steele's "dodgy dossier"—*i.e.*, allegedly "false or misleading representations," *Klein*, 865 F.3d at 1279. *Klein* does not suggest a plaintiff must learn of alleged falsity from the warrant application specifically.

*Hobson*, in turn, confirms plaintiff's claims are untimely.  The district court read that case as holding that the plaintiffs' First Amendment "claims accrued only when they knew"—conclusively— "both that they were targets of FBI investigation and surveillance *and* that the program was unconstitutional." JA__[ECFNo.115at17].  That misreads *Hobson*, which stated only that "mere awareness of lawful investigation" was insufficient to "constitute notice of possible constitutional violations."  737 F.3d at 39.  This Court held there that "as a matter of law," plaintiffs were "on notice of their claims" when they "knew that they were subjects of FBI investigation" *and* had read

57

articles that gave them reason to believe the FBI was conducting a politically motivated (and thus unconstitutional) surveillance program. *Id.* at 39-40. By this standard, plaintiff was on notice of his claims. Plaintiff knew he had been surveilled and had reason to believe the surveillance was unauthorized: specifically, that it was "unjustified" because it was based on the Steele dossier, which the *Post* described as partly unverified and plaintiff himself at the time decried as false. *See id.* at 40 (*Hobson* plaintiff on notice when he "came to believe" FBI had targeted him for political activity).

The district court also invoked the "secrecy shrouding the FISA process." JA__[ECFNo.115at17]. But that "secrecy" is relevant only to the extent it delays discovery of surveillance. *See, e.g.*, *Smith v. Nixon*, 606 F.2d 1183, 1190 (D.C. Cir. 1979) ("secrecy surrounding the wiretap program" prevented plaintiff from "discover[ing] the existence of the wiretap"). Once a plaintiff makes that discovery, secrecy does not delay accrual. After all, secrecy is inherent to wiretapping—yet Title III claims accrue when a plaintiff discovers he has been wiretapped. *Supra* at 54. Plaintiff's allegations of concealment (JA__[SAC] ¶ 66) thus add nothing: "fraudulent concealment does not come into play, whatever the

58

lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Hobson*, 737 F.2d at 35.

Finally, plaintiff need not have known the identities of all the individual defendants before suing. He was aware of government surveillance and thus could have sued the institutional defendants and "John Does"—as he *in fact did*, too late. JA__[SAC@1]; *Andes v. Knox*, 905 F.2d 188, 189 (8th Cir. 1990) (deeming Title III claim untimely where plaintiff "could have sued" one known defendant "and sought the identity of other defendants through discovery"); *Simmons v. District of Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (plaintiff may sue John Does and substitute named defendants after discovery).

Courts do not depart from the discovery-of-injury rule even in contexts where fairness concerns most "cry" out for it. *Rotella*, 528 U.S. at 555 (discussing medical-malpractice cases). Neither plaintiff nor the district court offered sufficient justification for creating a new rule here.[17] Even if plaintiff needed to know more than the fact of the

---

[17] It is also immaterial "what investigative steps, if any, [plaintiff] took or could have taken after April 2017," JA__[ECFNo.115at18], because plaintiff was on notice of his claims by then. *Hobson*, 737 F.2d at 35 (distinguishing "awareness of sufficient facts to identify a

*Continued on next page.*

surveillance, he did not need to know every detail of the "17 distinct, significant errors and omissions in the FISA" applications.  JA__[SAC ¶ 42]; *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) ("[f]ull knowledge often awaits discovery").  If plaintiff was certain enough to publicly declare himself the victim of "unjustified, politically motivated surveillance" by the government, he was certain enough to bring those accusations to court.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: February 9, 2024            Respectfully submitted,

                                       */s/ David N. Kelley*
                                      David N. Kelley
                                      O'MELVENY & MYERS LLP
                                      Times Square Tower
                                      7 Times Square
                                      New York, NY 10036
                                      Telephone:  (212) 326-2000
                                      Fax: (212) 326-2061
                                      dkelley@omm.com

---

particular cause of action" from "the kind of notice … that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit").

Meredith N. Garagiola
Daniel Brovman
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414
mgaragiola@omm.com
dbrovman@omm.com

*Counsel for Defendant-Appellee
James B. Comey*

/s/ Meaghan VerGow
Meaghan VerGow
Andrew R. Hellman
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
Telephone: (202) 383-5300
Fax: (202) 383-5414
mvergow@omm.com
andrewhellman@omm.com

*Counsel for Defendant-Appellee
Stephen Somma*

/s/ Brigida Benitez
Brigida Benitez
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
bbenitez@steptoe.com

*Counsel for Defendant-Appellee
Andrew McCabe*

61

<u>/s/ Patrick F. Linehan</u>
Patrick F. Linehan
Brian M. Heberlig
STEPTOE LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036-1795
Tel: (202) 429-3000
Fax: (202) 429-3902
plinehan@steptoe.com
bheberlig@steptoe.com

*Counsel for Defendant-Appellee*
*Brian J. Auten*

<u>/s/ Robert J. Katerberg</u>
Robert J. Katerberg
Amy Jeffress
Kaitlin Konkel
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
Tel.: (202) 942-5000
robert.katerberg@arnoldporter.com
amy.jeffress@arnoldporter.com
kaitlin.konkel@arnoldporter.com

*Counsel for Defendant-Appellee*
*Lisa Page*

/s/ Christopher C. Muha
Christopher C. Muha
DILLON PLLC
1717 K Street NW, Suite 900
Washington, D.C. 20005
Phone: (202) 787-5858
cmuha@dillonpllc.com

*Counsel for Defendant-Appellee
Kevin Clinesmith*

/s/ Aitan D. Goelman
Aitan D. Goelman
Ivano M. Ventresca
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
Telephone:  (202) 778-1800
Fax:  (202) 822-8106
agoelman@zuckerman.com
iventresca@zuckerman.com

*Counsel for Defendant-Appellee
Peter Strzok*

/s/ Joseph R. Palmore
Joseph R. Palmore
James M. Koukios
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone:  (202) 887-1500
Fax:  (202) 887-0763
JPalmore@mofo.com
JKoukios@mofo.com

Alexandra M. Avvocato
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone:  (212) 336-4149
Fax:  (202) 887-0763
AAvvocato@mofo.com

*Counsel for Defendant-Appellee
Joe Pientka III*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's Order of July 19, 2023, requiring that all defendants file no more than two briefs with a combined word limit of 17,000 words, because it contains 11,192 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/David N. Kelley*
David N. Kelley

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ David N. Kelley*
David N. Kelley