# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

CARTER PAGE,

*Plaintiff-Appellant,*

v.

JAMES B. COMEY; ANDREW MCCABE; KEVIN CLINESMITH;
PETER STRZOK; LISA PAGE; JOE PIENTKA, III; STEPHEN SOMMA;
BRIAN J. AUTEN; UNITED STATES DEPARTMENT OF JUSTICE;
FEDERAL BUREAU OF INVESTIGATION; UNITED STATES OF AMERICA;
JOHN DOE 1-10; JANE DOE 1-10,

*Defendants-Appellees.*

Appeal from the U.S. District Court for the District of Columbia
Civil Case No. 1:20-cv-03460-DLF; Hon. Dabney L. Friedrich

## REPLY BRIEF OF APPELLANT CARTER PAGE

GENE C. SCHAERR
 *Counsel of Record*
ERIK S. JAFFE
BRIAN J. FIELD
ANNIKA BOONE BARKDULL
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Counsel for Plaintiff-Appellant*

MARCH 8, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................iii

GLOSSARY...................................................................................... v

STATUTES AND REGULATIONS ............................................ vi

INTRODUCTION ................................................................................ 1

SUMMARY OF ARGUMENT................................................... 2

ARGUMENT ...................................................................................... 4

I.    Dr. Page Adequately Pleaded a Claim Against the Government Under the PATRIOT Act. ...................................... 4

    A.    The PATRIOT Act Claim Adequately States a Claim for Relief................................................................... 4

    B.    Dr. Page Did Not Forfeit His PATRIOT Act Claim........... 8

II.    Dr. Page Adequately Pleaded That Each Individual Defendant Used or Disclosed FISA-Obtained Information in Violation of Section 1809(a). ............................ 10

    A.    The Complaint Plausibly Alleges That the Individual Defendants Used and Disclosed FISA-Obtained Information to Obtain Additional Unlawful Surveillance and for Other Investigatory Purposes........................................................................... 11

    B.    The Complaint Plausibly Alleges that Defendants Strzok and Lisa Page Disclosed FISA-Obtained Information to the Media.................................................. 16

III.    Dr. Page Sufficiently Alleged that the Individual Defendants "Engage[d] in" Unauthorized Electronic Surveillance in Violation of Section 1809(a)(1)........................ 19

    A.    "Engaging In" Surveillance Includes Participation in the FISA Authorization Process................................... 20

B. The "Acquisition" of FISA Information Includes Obtaining and Learning The Information, Not Merely the Physical Act of Acquiring It. ........................... 23

C. Interpreting Section 1809(a) To Include Only Those Who Conduct Physical Surveillance Would Undermine FISA's Purpose. ............................................ 25

D. Dr. Page's Arguments Regarding the Correct Interpretation of Section 1809(a) Are Not Waived. ......... 28

IV. As the District Court Correctly Recognized, On the Facts of the Complaint, Dr. Page's Claims Were Timely Filed. ......... 30

A. The District Court Correctly Held That The Patriot Act Claim Against Government Defendants Is Not Time-Barred. .................................................................. 31

B. The District Court Correctly Held That The Claims Against the Individual Defendants Are Not Time-Barred, Either. ................................................................. 34

CONCLUSION ........................................................................................ 37

CERTIFICATE OF COMPLIANCE ........................................................ 38

ANTI-VIRUS CERTIFICATION ............................................................. 38

# TABLE OF AUTHORITIES

**Cases**

*Barton v. Barr,*
    140 S. Ct. 1442 (2020) ........................................................................ 22

*Cook Inlet Tribal Council, Inc. v. Dotomain,*
    10 F.4th 892 (D.C. Cir. 2021) .......................................................... 22

*Feldman v. C.I.A.,*
    797 F.Supp.2d 29 (D.D.C. 2011) ..................................................... 15

*Fikre v. Fed. Bureau of Investigation,* 142 F. Supp. 3d 1152 (D. Or.
    2015) ........................................................................................................ 6

*Grand Lodge A.O.U.W. v. Haddock,*
    82 P. 583 (Kan. 1905) ......................................................................... 21

*Hettinga v. United States,*
    677 F.3d 471 (D.C. Cir. 2012) .......................................................... 18

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991) ............................................................................... 29

*Krieger v. Fadely,*
    211 F.3d 134 (D.C. Cir. 2000) .......................................................... 14

*McClain v. West,*
    87 So. 49 (Fla. 1920) ........................................................................... 21

*N. Star Steel Co. v. Thomas,*
    515 U.S. 29 (1995) ............................................................................... 35

*Neder v. United States,*
    527 U.S. 1 (1999) ................................................................................. 20

*Penn Allegh Coal Co. v. Holland,*
    183 F.3d 860 (D.C. Cir. 1999) .......................................................... 26

*Richards v. Mileski,*
    662 F.2d 65 (D.C. Cir. 1981). ........................................................... 32

*Teva Pharms., USA, Inc. v. Leavitt,*
    548 F.3d 103 (D.C. Cir. 2008) .......................................................... 30

*Toumazou v. Turkish Republic of Northern Cyprus,*
71 F.Supp.3d 7 (D.D.C. 2014) ........................................ 12

*U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.,*
685 F.Supp.2d 129 (D.D.C. 2010) .................................. 15

*United States ex rel. Head v. Kane Co.,*
798 F.Supp.2d 186 (D.D.C. 2011) .................................. 14

*United States v. Belfield,*
692 F.2d 141 (D.C. Cir. 1982) ...................................... 26

*Yee v. City of Escondido,*
503 U.S. 519 (1992) ............................................. 29, 30

**Statutes**

18 U.S.C. § 2712 ..................................................... 4

50 U.S.C. § 1806 ............................................... 5, 6, 24

50 U.S.C. § 1809 ....................................... 17, 18, 19, 23, 25

50 U.S.C. § 1812. ................................................... 23

# GLOSSARY

CIA        Central Intelligence Agency

DOJ        United States Department of Justice

FBI        Federal Bureau of Investigation

FISA       Foreign Intelligence Surveillance Act

FISC       Foreign Intelligence Surveillance Court

# STATUTES AND REGULATIONS

All applicable statutes, etc. are contained in the Brief for Appellant.

## INTRODUCTION

Defendants knowingly engaged in electronic surveillance of an innocent man—Dr. Page—solely because he advised a presidential campaign they disagreed with. To do so, they omitted material information from warrant applications to mislead the FISC into issuing surveillance warrants. They then used and disclosed information obtained from their surveillance to justify *continued* unlawful investigatory activities. And they leaked information about the surveillance to the press in order to discredit their political opponents. Defendants now seek to avoid accountability for those actions.

This Court must not let them. If allowed to stand, the type of unlawful surveillance and the politically motivated leaking in which Defendants engaged could easily be deployed against political opponents of any party and any political stripe. Thus, whatever one thinks of the particular candidate Dr. Page worked for, or the merits of Defendants' objections to that candidate's policies, it is important to the rule of law and to the Nation's political health that the activities plausibly alleged in the complaint be clearly identified as illegal. Such a ruling is essential to deterring such activities in the future.

## SUMMARY OF ARGUMENT

I. Dr. Page adequately pleaded his Patriot Act claim against the Government. The complaint plausibly alleges that Defendants used and disclosed information for the unlawful purpose of obtaining further surveillance. And the argument is not forfeited: since the onset of litigation, Dr. Page has argued that Defendants used and disclosed the information they received in subsequent warrant applications to obscure their lack of probable cause for surveillance of Dr. Page.

II. Dr. Page adequately pleaded that the Individual Defendants used and disclosed FISA obtained information, knowing that information had been obtained without probable cause. Contrary to the district court and Defendants' assertions, he did not simply lump all their conduct together. The complaint spends pages alleging the individual actions each Defendant took in relation to the illegal surveillance of Dr. Page, including the preparation of subsequent renewal applications that used FISA-obtained information.

III. Dr. Page adequately pleaded that the Individual Defendants unlawfully "engaged in" electronic surveillance in violation of Section 1809(a). The statutory definition of that term encompasses not only the

physical act of conducting surveillance, but also preparatory acts necessary for surveillance to be conducted, such as preparing warrant applications. If it did not, the purposes of FISA would be severely undermined. And the "acquisition" of information obtained by electronic surveillance includes not only the initial unlawful acquisition, but also obtaining the information after the fact. These arguments are not waived: Dr. Page has argued throughout this litigation that one who participates in the surveillance process has "engaged in" electronic surveillance, whether that individual conducts the physical act or participates in other parts of the process.

IV. Contrary to Defendants' assertions, the claims are also not time barred. The district court correctly recognized that it could not conclude from the face of the complaint that Dr. Page had notice of the basis for his claims until the Horowitz Report was issued in December 2019. Dr. Page's claims were timely filed within the applicable limitations periods after that publication. And this hail-Mary argument from the Defendants merely underscores the weakness of their attacks on the sufficiency of Dr. Page's complaint.

# ARGUMENT

## I. Dr. Page Adequately Pleaded a Claim Against the Government Under the PATRIOT Act.

Starting with the claim against the Government under the PATRIOT Act, Dr. Page plausibly alleged that Defendants used and disclosed FISA-obtained information in their *subsequent* warrant applications, while omitting material exculpatory information, and that those disclosures were made for the unlawful purpose of misleading the FISC to allow further surveillance. That is sufficient to state a claim under the PATRIOT Act's private cause of action for "[a]ny person who is aggrieved by any willful violation of" certain parts of FISA. 18 U.S.C. § 2712.

### A. The PATRIOT Act Claim Adequately States a Claim for Relief.

Dr. Page brought a claim under the PATRIOT Act on the basis that Defendants obtained, disclosed, or used information obtained by electronic surveillance of Mr. Page in violation of FISA. SAC ¶¶ 303-11. Defendants do not contest that the government may be held liable under the PATRIOT Act for violations of Section 1806, upon which Dr. Page's claim is based. That section provides that information obtained by electronic surveillance may be used or disclosed only for "lawful

purposes." 50 U.S.C. § 1806(a). The determinative question for the PATRIOT Act claim is whether Dr. Page plausibly alleged that Defendants used FISA-acquired information without any lawful purpose. *Id.* And he did: Omitting exculpatory evidence in applications to *continue* surveillance in the absence of probable cause simply is not a lawful purpose. Contrary to the Government Appellees (at 29), FISA-obtained information is not "additional accurate information" when the results of prior surveillance are presented with material information omitted. And including such half-truths does not "help the FISC reach an accurate determination regarding probable cause." *Cf.* Government Appellees' Br. at 33.

Defendants' assertion that "the alleged inclusion of such false or misleading *non*-FISA-obtained information" does not violate the PATRIOT Act misses the point. Government Appellee's Br. 30. Dr. Page's allegation is that the government included surveillance information in subsequent warrant applications, despite knowing it had excluded exculpatory information, for the "unlawful purpose" of misleading the court "to believe probable cause for surveillance exists when it does not." Opening Br. 79. That allegation states a claim under Section 1806(a),

which requires an aggrieved party to allege a "willful disclosure or use of information acquired from an electronic surveillance conducted pursuant to FISA without the consent of the person who was the subject of the surveillance and without the required minimization procedures or without any lawful purpose." *Fikre v. Fed. Bureau of Investigation*, 142 F. Supp. 3d 1152, 1169 (D. Or. 2015)

(citing 50 U.S.C. § 1806(a)).

Defendants next assert that the allegation contradicts other portions of the complaint, which averred that the surveillance provided no evidence that Dr. Page was a Russian agent. Government Appellees' Br. 32-33. But, as Dr. Page has already explained, not all information obtained by unauthorized surveillance would necessarily show that the target of surveillance was a foreign agent. Opening Br. 67. There is nothing contradictory in asserting that Defendants used information they gathered through their surveillance activities to obtain subsequent warrants, and also that that information did not establish probable cause to seek a warrant allowing continued surveillance.

Furthermore, contrary to Defendants' assertion (Government Appellees' Br. 31), Dr. Page *does* allege that the government

"manipulated" the FISA-obtained information put forward in the renewal applications, and that the government omitted material facts relevant to that information in a way that misled the FISC. The FISC itself recognized these "material omissions." SAC ¶ 50. Clinesmith even acknowledged that, if Dr. Page was a CIA source, "the FBI would need to disclose that on the next FISA application." SAC ¶ 189. Yet Defendants submitted the next application *without* reporting that Dr. Page had been a source for the CIA—a "salient fact" that was critical to truthfully disclosing FISA-obtained information in the next surveillance warrant. SAC ¶¶ 189-94. That allegation is likewise sufficient to state a claim under Section 1806(a).

Defendants are also wrong in their assertion that the complaint contradicts Dr. Page's PATRIOT Act claim by suggesting that the government was required to justify continued surveillance "in light of any 'new findings' learned from the ongoing surveillance." Government Appellees' Br. 30. A duty to *truthfully* report the results of surveillance— even if the results would lead a court to conclude no probable cause exists to justify further surveillance—is perfectly consistent with the duty not to present that information misleadingly. And the requirement to justify

continued surveillance in light of new findings underscores why Defendants were motivated to include FISA-obtained information in their renewal applications—and to omit key facts that would have shown the true character of the information they submitted to the FISC. Dr. Page alleged that Defendants included information they obtained through their surveillance in *subsequent* warrant applications, precisely for the unlawful purpose of obtaining further surveillance, while omitting material information that obscured the lack of probable cause. He has thus stated a claim under the PATRIOT Act.

## B. Dr. Page Did Not Forfeit His PATRIOT Act Claim.

Just as Defendants' claims on the merits are insufficient, so too is their assertion (at 24-26) that Dr. Page's arguments regarding the PATRIOT Act claim are "new" and, for that reason, forfeited. As the district court noted, Dr. Page argued below that the Defendants' "use of the warrant results in renewal applications" supported his PATRIOT Act claim. Op. 42, 44. Those allegations are contained in the complaint, which plainly states that Defendants "caused false or misleading information to be provided to the FISC" for the "unlawful end" of "obtain[ing] surveillance despite the absence of probable cause." SAC ¶ 16.

Nor did Dr. Page mischaracterize the allegations of his own complaint in his briefing, as Defendants assert. Government Appellees' Br. 26-27. From the outset, Dr. Page has alleged that the Defendants knowingly "obtained, disclosed, or used information obtained by electronic surveillance of Mr. Page knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized by the FISA." SAC ¶ 307. The allegation is not merely that using the information violated the PATRIOT Act because the *initial* surveillance was unlawful: It is also that Defendants then used the information thus obtained to justify *additional* surveillance, in furtherance of their unlawful purpose of continued surveillance without probable cause. Indeed, the very portions of the district court briefing quoted by Defendants articulated the very argument they say is forfeited: "the FISA warrants covering him [Page] had been obtained without probable cause by making material misrepresentations and omissions, which rendered the disclosure or use of information obtained through those warrants unlawful." Government Appellees' Br. 25 (quoting JA__ [DktEntry99at19]).

That is the same contention Dr. Page advances in this Court: Where the government "omits material information, the inclusion of which would defeat probable cause" in its FISA warrant renewal applications, the government acts "without any lawful purpose." Opening Br. 79-80 (internal quotation marks and citation omitted). In other words, by omitting material information, Defendants acted with the unlawful purpose of *continuing* their surveillance of Dr. Page without probable cause to do so. The argument is not new, the claim is not forfeited, and the district court was correct in so holding.

This forfeiture argument is nevertheless instructive, for it shows just how desperately the Defendants wish to avoid a decision on the merits of Dr. Page's PATRIOT Act claim.

## II. Dr. Page Adequately Pleaded That Each Individual Defendant Used or Disclosed FISA-Obtained Information in Violation of Section 1809(a).

The same is true as to Dr. Page's first claim against the Individual Defendants. Dr. Page plausibly pleaded that each of the Individual Defendants participated in activities, such as preparing subsequent warrant applications, that unlawfully used or disclosed the information they obtained through FISA surveillance to justify continued

surveillance and additional investigatory activities. He also alleged that they knew that the surveillance was unlawful, in violation of Section 1809(a). He further alleged that Defendants Strzok and Lisa Page disclosed FISA-obtained information to the media. Those allegations are sufficient to support a claim that Defendants used or disclosed information they knew to have been obtained without lawful authorization in violation of Section 1809(a). And none of Defendants' arguments to the contrary undermine that conclusion.

### A. The Complaint Plausibly Alleges That the Individual Defendants Used and Disclosed FISA-Obtained Information to Obtain Additional Unlawful Surveillance and for Other Investigatory Purposes.

Dr. Page alleged that the Individual Defendants used and disclosed information they obtained through unlawful surveillance in subsequent warrant applications and for other investigative purposes. SAC ¶ 230. Defendants focus on two paragraphs of the complaint in isolation to support their contention that Dr. Page's allegations regarding use and disclosure of FISA-obtained information are too conclusory to withstand a motion to dismiss. Individual Appellees' Br. 43. But, when read with the rest of the complaint, it is clear that Dr. Page's allegations that Defendants obtained subsequent renewal warrants, surveillance, and

11

investigative information without probable cause apply to individual conduct committed by each Defendant.

Indeed, before stating that the Defendants used the information obtained from the FISA warrants to obtain subsequent warrants, conceal the lack of probable cause from earlier warrants, obtain and justify additional investigative measures, and other purposes, SAC ¶¶ 229-30, Dr. Page devoted many pages of the complaint to describing each individual Defendant's role in "generating the faulty warrants" and otherwise participating in Operation Crossfire Hurricane. Opening Br. 71 (citing SAC ¶¶ 26-29, 30-32, 33, 60, 70-71, 81, 91, 97, 105-06, 109-14, 120-21, 128, 147, 150-64, 168, 170, 175-82, 186, 193-96, 198-210, 215). Those descriptions of individual conduct do not "lump[] all the defendants together" with "no factual basis to distinguish their conduct." *See* Op. 33 (quoting *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F.Supp.3d 7, 21 (D.D.C. 2014)); Individual Appellees' Br. 44.

Nor do those paragraphs (contrary to Individual Defendants' assertion at 43-44) merely assert "investigatory" activities that existed independent of the use of FISA-acquired information: they allege that the individual defendants engaged in specific conduct concerning the renewal

applications, such as preparing, reviewing, and signing them. For example, Comey signed the warrants, including the subsequent warrants, which Dr. Page alleges used FISA-acquired information for an unlawful purpose. SAC ¶¶ 150-154. McCabe approved those subsequent warrant applications. SAC ¶¶ 157-163. Auten played a key role in preparing the applications. SAC ¶¶ 175-184. Clinesmith "provided support" to "prepare FISA applications," SAC ¶ 186, and was involved in the decision not to disclose key information in the fourth application, SAC ¶¶ 193-94. Those activities concerning subsequent warrant applications, coupled with Dr. Page's allegation that Defendants used FISA-obtained information to have those warrant applications approved, SAC ¶ 230, allege specific conduct by which each individual Defendant used information they knew was obtained without probable cause.[1]

---

[1] Contrary to Defendants' assertion (at 45), Dr. Page does not ask the courts to "scour[] every document mentioned in the complaint." Individual Appellees' Br. at 45. The referenced letters, for example, are described by name, such that a reader can easily identify the specific letter at issue. SAC ¶ 45. In any event, Dr. Page's claim is supported by those documents, but it does not hinge on them. The allegations in the complaint are sufficient to plead a use and disclosure claim on their own.

All of the Defendants' arguments to the contrary fall flat. Contrary to Individual Appellees' argument (at 44), Dr. Page is not required to specify what "particular" FISA-obtained information was used at the complaint stage. Were that so, no plaintiff could plead a use and disclosure claim, given the secrecy surrounding investigations. Until they are permitted to proceed to discovery, plaintiffs will almost always remain largely in the dark. Dr. Page is required only to plead, on information and belief, that Defendants used FISA-obtained information. Opening Br. 68. If his lawsuit is permitted to go forward, there will "come a time when [the plaintiff] would have to identify the particular" information Defendants disclosed. *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000). "But that point surely was not as early as the pleading stage." *Id.*

That two of the authorities Dr. Page cited arose in the False Claims Act context, moreover, does not make them irrelevant: Both arose at the motion to dismiss stage, and make clear that pleadings need not contain every fact that will be necessary to prevail in litigation. *United States ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 196 (D.D.C. 2011) ("to survive a 12(b)(6) motion, plaintiff need only 'plead factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *U.S. ex rel. Head v. Kane Co.*, 798 F.Supp.2d 186, 196 (D.D.C. 2011) (quoting *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F.Supp.2d 129, 133 (D.D.C. 2010)). And Defendants offer no other rebuttal of those cases. Individual Appellees' Br. 47.

Furthermore, Defendants are wrong in their assertion that *Feldman* is distinguishable. *See* Individual Appellees' Br. 47. To the contrary, in sustaining the claim at issue there, the *Feldman* court relied on the allegation that the mere fact of the investigation had been leaked to individuals who should not have been privy to it. *Feldman v. C.I.A.*, 797 F.Supp.2d 29, 41 (D.D.C. 2011). That allegation is analogous to those asserted by Dr. Page that Defendants used information from the FISA surveillance for warrant applications and investigatory purposes. *See* SAC ¶¶ 142, 229-30, 263-74.

Defendants nevertheless parrot the district court's flawed reasoning, asserting that the complaint is based on "internally contradictory allegations" (Op. 45) because it alleges both that the renewal applications used FISA-acquired information and that the

surveillance found no evidence that Page was a foreign agent. Individual Appellees' Br. 45; Op. 45. This argument fails when the Individual Defendants make it, just as it does when made by the Government Defendants. *See* Section I.A, *supra*. The mere fact that Defendants proffered fruits of surveillance to the FISC in subsequent warrant applications does not mean that those fruits established probable cause to believe that Dr. Page was a Russian agent. And Dr. Page's complaint sufficiently alleges that this proffering violated Section 1809(a). *See* SAC 142, 229-30, 263-74. Defendants offer no meaningful rebuttal to this point. Individual Appellees' Br. 44-45.[2]

### B. The Complaint Plausibly Alleges that Defendants Strzok and Lisa Page Disclosed FISA-Obtained Information to the Media.

Defendants also do not provide any argument sufficient to overcome Dr. Page's well-pleaded allegation that Defendants Strzok and Lisa Page unlawfully disclosed FISA-obtained information to the media.

---

[2] Defendants instead misstate Dr. Page's briefing. Dr. Page did not "ask[] the Court to accept that the surveillance would continue to produce information on him": he simply quoted the renewal applications, which made that assertion. Opening Br. 65. And, contrary to the Individual Defendants' assertion (at 44), Dr. Page thus did not contradict the complaint.

1.     Their assertion that "defendants knew [Dr. Page's] identity *before* any warrants were sought or surveillance conducted" does not change the fact that Page's identity as a party to the surveilled communications was obtained by that surveillance. Individual Appellees' Br. 50. By way of analogy: when an individual receives a call and sees the caller's name because it is saved as a contact, they know the identity of their friend before the call is made. But the fact that the friend is the individual making the call is obtained through receiving the communication. So too here: When Defendants surveilled Dr. Page's communications, they obtained his identity *as a party to the communications at issue* through FISA surveillance. That sufficiently states a violation of Section 1809(a)(2).

Defendants are also plainly wrong when they assert that "the complaint contains no allegation that Strzok or Lisa Page knew or had reason to know that his identity was obtained by unauthorized surveillance, as required by section 1809(a)(2)." Individual Appellees' Br. 50. In fact, Dr. Page alleged that the leaked information was "protected from disclosure under the FISA." SAC ¶ 226. The clear inference from an allegation that the information was "protected" is that Defendants were

liable for its disclosure, and thus that they made the disclosure "knowing or having reason to know that the information was obtained through electronic surveillance not authorized" under FISA. 50 U.S.C. § 1809(a)(2).

Finally, Defendants' attempt to distinguish between a "media leak strategy" and a "plan to leak [FISA-obtained] information," Individual Appellees' Br. 49 (alteration in original), asks this Court *not* to take all information in the light most favorable to the plaintiff, as required on a motion to dismiss. *See Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). In fact, Dr. Page "must be granted the benefit of all inferences that can be derived from the facts alleged." *Id.* And that includes the highly reasonable inference that a "media leak strategy" executed by individuals who conducted surveillance would pertain to the information they obtained from that surveillance. That inference is especially likely when government officials (i) say they "can't take the risk" of a political opponent being elected and that they will "stop it," (ii) conduct unauthorized surveillance of an individual, (iii) discuss a "media leak strategy," and then (iv) congratulate one another after a news article concerning their surveillance is released. SAC ¶¶ 70-71, 220-223.

Pretending that their "media leak strategy" pertains to some other, non-FISA obtained information belies common sense.

2. Having failed to offer any sufficient argument on the merits, Defendants assert (at 49) that this claim is waived. That argument fails too. The complaint alleges that Defendants leaked information "including but not limited to" the results of the warrants, and those results plainly include the "contents" of information obtained by electronic surveillance. Likewise, contrary to Defendants' argument (at 49), the fact that Section 1809(a)(2) does not include the word "contents" does not eliminate the importance of the statutory definition throughout the entire statute—particularly where Dr. Page alleges that Defendants leaked the results of their surveillance, which would include the contents of any communications they obtained through surveillance. SAC ¶ 226.

## III. Dr. Page Sufficiently Alleged that the Individual Defendants "Engage[d] in" Unauthorized Electronic Surveillance in Violation of Section 1809(a)(1).

Dr. Page's allegations are also sufficient to establish that the individual defendants violated Section 1809(a)(1) by "engaging in" unauthorized electronic surveillance. That is because (a) the term "engaging in" surveillance includes participating in the FISA

authorization process, and (b) the "acquisition" of information includes obtaining and even learning about information, not just physically obtaining it. Any contrary interpretations of these statutory terms would severely undermine FISA's purposes. And, contrary to Defendants, none of these points has been waived.

## A.   "Engaging In" Surveillance Includes Participation in the FISA Authorization Process.

When interpreting statutory phrases, courts presume "that Congress intends to incorporate the well-settled meaning of the common-law terms it uses," *Neder v. United States*, 527 U.S. 1, 23 (1999)

. And as Dr. Page explained in his opening brief (at 37-45), the term "engage in" has historically included not only the limited action of performing physical conduct, but also the broader actions of directing and otherwise participating in that conduct. Defendants' only response (at 24-25) to this rich common law history is to point out that the cases establishing the common law meaning of the term "engages in" arise in different contexts than FISA. But there is nothing unusual about that; courts regularly consider the meaning of phrases established in varying factual circumstances when interpreting legal language.

Defendants try to evade this common law history by asserting, without evidence or explanation, that "applying for a liquor license is not 'engag[ing] in the sale of intoxicating drinks,' and applying for a fishing license is not 'engag[ing] in . . . taking fish'" under the cited cases. Individual Appellees' Br. 25. But they are wrong. When applying for licenses is part and parcel of the operation of a business, one who prepares and submits the license application is "engaged in" that business. The cases make clear that one who owns or otherwise participates in an endeavor "engages in" that activity, even if he doesn't hand out drinks or cast the net like the bartender or fisherman he hired. *Grand Lodge A.O.U.W. v. Haddock*, 82 P. 583, 583-84 (Kan. 1905)

; *McClain v. West*, 87 So. 49, 49 (Fla. 1920). Indeed, as the head of the operation, he is in fact *more* responsible for the enterprise he established than are the employees who conduct the day-to-day activities of the business. Defendants offer no reason that applying for the license should be treated any differently than other actions an owner might take in the course of his business, like buying property, advertising services, and hiring employees.

Defendants next turn to legislative history in an attempt to show why the common law definition of "engages in" does not apply here, but those arguments are similarly unpersuasive. They argue (at 26) that "engages in" cannot include preparatory acts without rendering other language in FISA redundant, but redundant language is common throughout FISA. They respond to the redundancy present in the definition of "agent of a foreign power"—the same definition they rely on to argue against redundancy—is that the language in question was added by a later Congress. Individual Appellees' Br. 28. But the point stands that "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Barton v. Barr*, 140 S. Ct. 1442, 1453 (2020); *see also, e.g., Cook Inlet Tribal Council, Inc. v. Dotomain*, 10 F.4th 892, 896 (D.C. Cir. 2021).

Defendants next (at 29) try to evade the fact that Section 1809(a) separately lists "engag[ing] in" and "conducting" surveillance by asserting that Section 1809 simply equates "conducting" electronic surveillance with "engaging in" it, "each referring to a separate way that

electronic surveillance might be authorized, one 'by this chapter' and one by 'any express statutory authorization that is an additional exclusive means for conducting electronic surveillance.'" Individual Appellees' Br. 29 (quoting 18 U.S.C. §1809(a)(1)). But they ignore that the means by which "conducting" surveillance is authorized refers to a separate section of FISA, which discusses only the authorization for the conducting of surveillance—the actual physical fact—not liability for all who participate in, or "engage in," surveillance. 50 U.S.C. § 1812.

In short, Defendants have failed to rebut the proper interpretation of "engages in," which includes not merely physical acts like placing a wiretap, but also other acts necessary for the surveillance, such as preparing warrant applications. Dr. Page has pleaded that Defendants participated in a host of activities necessary for surveillance to be conducted, and he has thus stated a claim under Section 1809(a)(1).

**B.      The "Acquisition" of FISA Information Includes Obtaining and Learning The Information, Not Merely the Physical Act of Acquiring It.**

Defendants also fail to rebut Dr. Page's explanation of the proper interpretation of "acquisition," as it is used in the definition of electronic surveillance. They point to two dictionary definitions and criticize an

alternative definition offered by Dr. Page because it dates from 1989, but offer no reason to believe that the meaning of "acquisition" would have changed in those ten years. More importantly, pointing to definitions that support a narrow reading of acquisition that includes only the initial, physical collection of information does nothing to prove that such a reading is the better interpretation of the statute.

Defendants assert (at 35) that the separate use of "acquisition, retention, and dissemination" in FISA's minimization procedures means "acquisition" can only refer to the initial collection by the agency. But those are three distinct acts, and obtaining or learning the information can only fall under the term "acquisition." One cannot retain what one has not first obtained, nor can one communicate it to another. And, contrary to Defendants' argument (at 36), Section 1806(a) weighs in favor of the broader interpretation of "acquisition." Nothing in that provision "equates" acquiring and conducting surveillance: rather, it refers to two separate acts: the one by which the surveillance is "conducted," that is, physically performed, and the separate question of how it is "acquired," or comes into possession of an individual who might use or disclose it unlawfully. 50 U.S.C. § 1806(a). Defendants also dismiss (at 36) dismiss

evidence of how the intelligence community normally uses the term on the ground that it post-dates FISA, ignoring the likelihood that the intelligence community's usage of terms reflects its legal obligations under FISA.

Finally, Defendants' assertion (at 38) that this interpretation of "acquisition" would trigger liability for an entire audience if information were broadcasted ignores a key element of Section 1809 liability: intentionality. 50 U.S.C. § 1809. One does not become liable for acquiring information from unlawful surveillance simply by having it thrust upon him. But where, as here, government officials *intentionally* acquired information from unlawful surveillance, they have "engaged" in surveillance in violation of § 1809(a)(1)—even if that information was first physically acquired by someone else.

## C. Interpreting Section 1809(a) To Include Only Those Who Conduct Physical Surveillance Would Undermine FISA's Purpose.

Precluding plaintiffs from recovering from those who order, supervise, and oversee illegal surveillance would defeat FISA's purpose of ensuring that surveillance is conducted only when there is probable cause. To be sure, purpose cannot change statutory meaning. But in cases

of linguistic ambiguity, a statute's purpose provides strong evidence of Congress's meaning. *See, e.g., Penn Allegh Coal Co. v. Holland*, 183 F.3d 860, 864 (D.C. Cir. 1999). Simply put, we do not assume that Congress adopts statutory definitions that would undercut what it hopes to accomplish in its legislation.

Both Defendants and the district court assert that FISA's purpose was "to counter the abuses of *warrantless* surveillance." Individual Appellees' Br. 39; Op. 28. But both this Court's precedent and the district court's own discussion of the issue acknowledge that FISA exists not only to require warrants for surveillance in foreign intelligence matters, but also to "establish a regularized procedure" for obtaining those warrants, with "numerous steps that must be followed to get an order." Op. 27-28 (quoting *United States v. Belfield*, 692 F.2d 141, 145 (D.C. Cir. 1982)). Those steps are both procedural and substantive, and they self-evidently exist for the broader purpose of protecting individuals from *unjustified* surveillance—not merely surveillance without a perfunctory warrant, regardless of whether probable cause exists.

Moreover, Defendants' assertion that Section 1809(a) serves the "narrow purpose" of curbing "warrantless surveillance itself" is circular:

It *assumes* that to "engage in" electronic surveillance carries the narrow definition Defendants ascribe to it. Individual Appellees' Br. 40. Nor are Defendants correct (at 40) that Section 1809(b)'s affirmative defense for law enforcement officers who conduct surveillance "pursuant to a search warrant or court order" means that § 1809(a) served only the limited purpose of punishing warrantless surveillance; it simply indicates that Congress chose to immunize officers who acted pursuant to lawful warrants and court orders.

Finally, Defendants assert that the civil liability provision need not deal with anything other than warrantless surveillance because Congress chose to address the issue of surveillance without probable cause through other provisions of FISA. Individual Appellees' Br. 41. But those provisions deal with different harms of surveillance than does the civil liability provision. For example, Section 1806(e) allows a criminal defendant to suppress the fruits of such surveillance. But that only allows an individual to address one form of harm that illegal surveillance poses; it does not allow them to hold the perpetrators accountable in court. And, as Dr. Page has already explained (at 57-61), without the latter remedy,

it is impossible for individuals like Dr. Page to obtain redress for the

harm the government imposes by conducting illegal surveillance.[3]

### D. Dr. Page's Arguments Regarding the Correct Interpretation of Section 1809(a) Are Not Waived.

Having failed to offer a sufficient rebuttal to the proper

interpretation of the terms "engages in" and "acquisition," Defendants

alternatively contend (at 19) that Dr. Page waived any argument that

their conduct met the statutory definition of engaging in electronic

surveillance as principals, stating that he only argued that they were

liable as aiders and abettors below. But, as the district court

acknowledged, from the inception of this litigation, Dr. Page has claimed

that "the defendants are liable as both aiders and abettors as well as

principals, because they supervised, facilitated, prepared, approved, and

submitted the false applications, which caused others to physically

---

[3] Contrary to the Individual Defendants (at 41), it is no answer that Dr. Page could purportedly have asserted that Doe defendants engaged in the surveillance. The very page after suggesting that allegations against Doe defendants would allow Dr. Page redress for his Section 1809(a)(1) claim, Defendants say that Dr. Page's 1809(a)(2) claim fails because he could not identify the specific actions of each individual defendant in using and disclosing FISA-acquired information. Individual Appellees' Br. 41-42. That information is, of course, possessed only by Defendants because of the FISA process's secrecy.

engage in the unlawful surveillance." Op. 19 (quotation marks and alterations omitted). Dr. Page has always been clear in his claims that Defendants "engaged in" unlawful surveillance even if they did not participate in the physical act of surveillance. That is the same point that Dr. Page advances before this Court.

And even if the arguments presented here were not bound up in Dr. Page's theory of the case since the onset of litigation, this Court would retain the power to consider the argument. As the Supreme Court has repeatedly recognized, "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Thus, "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). This Court has therefore recognized that a plaintiff's "effort to refine and clarify its analysis in light of the district court's ruling cannot be transmuted into

a waiver of its arguments on appeal." *Teva Pharms., USA, Inc. v. Leavitt*, 548 F.3d 103, 105 (D.C. Cir. 2008) (citing *Yee*, 503 U.S. at 534).

Here, at most, Dr. Page refined his analysis in light of the district court's ruling on the statutory interpretation question. This Court is well-equipped to consider that pure question of law, and should reject Defendants' attempt to evade review of the district court's erroneous interpretation.

## IV. As the District Court Correctly Recognized, On the Facts of the Complaint, Dr. Page's Claims Were Timely Filed.

Having failed to provide any successful argument showing that Dr. Page failed to adequately plead his claims, the Government and Individual Defendants argue in the alternative that the claims should be dismissed because they are time-barred. Government Appellees' Br. 14-20; Individual Appellees' Br. 51-60. Their primary bases for that assertion are his statements that the surveillance against him was unjustified. Government Appellees' Br. 15-16; Individual Appellees' Br. 54-55. But that disavowal of the implication that he was a Russian agent does not show that Dr. Page knew or could have known the facts that gave rise to his claim here—specifically, the claim that Defendants unlawfully submitted warrant applications for the purpose of *continuing*

their surveillance even after it became clear there was no basis for such surveillance. Until the Horowitz Report was published in December 2019, Dr. Page did not have the necessary information to state his claims. Once that report was published, he timely filed the complaint. At most, Defendants' arguments raise factual issues for resolution on a motion for summary judgment, not a motion to dismiss.

### A. The District Court Correctly Held That The Patriot Act Claim Against Government Defendants Is Not Time-Barred.

Dr. Page's PATRIOT Act claim is timely. Defendants name three separate times at which the PATRIOT Act claim purportedly accrued, but the district court correctly determined that "[s]imply because Page knew about the FISA renewals does not mean that he knew that the applications contained FISA-obtained information," and thus that the claim was not time-barred. Op. 43.

First, Defendants assert that the PATRIOT Act claim accrued in April 2017 when the fact that Dr. Page had been the target of FISA surveillance was leaked to the media, and he stated in news articles that the surveillance against him was unjustified and politically motivated. Government Appellees' Br. 15-16. But the article in question simply

disclosed that the surveillance had taken place and discussed at the most general level what the warrant applications contained. J.A.__(Dkt. 88-8 at 4). Without more, Dr. Page could know only that he was not a Russian agent and that there was no justifiable basis for FISA surveillance of him. He could not know what sort of misconduct Defendants might have committed, or what claims he had a basis to bring. As this Court has recognized, mere knowledge that charges against him are false does not put an individual on notice that he has a cause of action. *Richards v. Mileski*, 662 F.2d 65, 72 (D.C. Cir. 1981).

Next, Defendants argue that the claim accrued when Dr. Page commented on a congressional memorandum discussing Defendants' surveillance. Government Appellees' Br. 17. But they have not provided any explanation as to why Dr. Page's statement to another reporter that Defendants' actions constituted an "unprecedent abuse of process" show that he had notice of the conduct that is central to his PATRIOT Act claim. The PATRIOT Act claim depends on information regarding the government's renewal applications. Nothing in the tweets Defendants cite discusses those applications or shows that Dr. Page knew or should have known that they used FISA-obtained information for the unlawful

purpose of continuing surveillance in the absence or probable cause. J.A.__(Dkt 88-15).

Likewise, contrary to the Government Appellees (at 18), Dr. Page's statement before another court says nothing about when his PATRIOT Act claim accrued. Those statements concerned defamation by a third party rather than the Government Defendants. J.A.__(Dkt 88-28 at 2). And Dr. Page's statements in those filings that the warrants were illegitimate says nothing about whether Defendants used the information obtained by those warrants for unlawful purposes. In short, Defendants have not identified any evidence that Dr. Page was on notice that the government had used FISA-obtained information for an unlawful purpose before the OIG report was published in December 2019.

Ruling that Dr. Page's claim is time-barred would effectively preclude him from obtaining any relief. Before the publication of the OIG report in December 2019 and the FISC's disclosure in January 2020 of the Government's concession that at least the third and fourth FISA warrants were not supported by probable cause, Dr. Page did not and could not know that Defendants manipulated FISA-obtained information in subsequent warrant applications for the unlawful purpose of

continuing illegal and unjustified surveillance. This is not an instance in which the plaintiff lacked information about only a few details, to be obtained during discovery. The district court thus correctly acknowledged that "[s]imply because Page knew about the FISA renewals does not mean that he knew that the applications contained FISA-obtained information." Op. 43. This Court should likewise hold that his claims are not time-barred. *Id.* At most, the Court should hold that Defendants' allegations raise factual issues that cannot be resolved on a motion to dismiss.

### B. The District Court Correctly Held That The Claims Against the Individual Defendants Are Not Time-Barred, Either.

In asserting that the claims against them are time-barred, the Individual Defendants (at 51-52) begin by arguing that the district court applied the incorrect limitations period to those claims. They are wrong. This is not a libel or invasion of privacy case, nor is a claim that Defendants engaged in unlawful surveillance similar to those torts. Op. 14. The District of Columbia's one-year bar for such claims is thus manifestly inapplicable.

Nor would it be appropriate, as Defendants argue, to apply a federal limitations period. As the district court correctly noted, the Supreme Court has made clear that applying an analogous federal limitations period is an "exception." Op. 14 (quoting *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 35 (1995)). That exception is applied "*only* when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *N. Star Steel Co.,* 515 U.S. at 35 (emphasis added). Defendants' only argument that a federal limitations period would be more appropriate is "the danger of forum shopping." Individual Appellees' Br. 53. But that omnipresent threat of litigation is not sufficient to justify departing from the standard rule that statutes of limitations are determined by state statutes. The district court thus correctly applied D.C.'s residual three-year limitations period. Op. 14.

Dr. Page's claims are timely under that standard. On that score, Individual Defendants make essentially the same argument that the Government Defendants did as to the PATRIOT Act claim, asserting that Dr. Page knew the basis for his claim as soon as the Washington Post

article was published. The argument fails for the same reasons. Simply knowing that he was not a Russian agent and that surveillance had been conducted against him is insufficient to put Dr. Page on notice that the Defendants had engaged in surveillance knowing that they did so without probable cause. And it is especially insufficient to support Dr. Page's use and disclosure claims, which require allegations concerning use of FISA-obtained information in *subsequent* warrant applications, investigatory activities, and media leaks. That information was not available until publication of the Horowitz Report, which included a finding of "17 distinct, significant errors and omissions in the FISA Warrant applications submitted regarding Dr. Page." SAC ¶ 42. The report disclosed that, "[a]mong other things, the FBI failed to verify the accuracy of information included in the warrant applications," and that "[i]n many instances, the FBI either had no supporting documentation, misrepresented what the supporting documentation stated, or the supporting documentation showed that the factual assertion made in the application was incorrect." *Id.* "This was the public disclosure that the FISA warrants lacked probable cause and were unlawful," *id.*—a public disclosure that until that time had not been available.

At most, this allegation by Individual Defendants likewise raises factual issues that cannot be resolved on a motion to dismiss.

## CONCLUSION

Dr. Page has adequately pleaded that Defendants unlawfully engaged in electronic surveillance, used and disclosed that information knowing it had been obtained without probable cause, and used and disclosed FISA-obtained information without a lawful purpose. This Court should reverse the district court's decision dismissing these claims.

March 8, 2024

Respectfully submitted,

_s/ Gene C. Schaerr_
GENE C. SCHAERR
  _Counsel of Record_
ERIK S. JAFFE
BRIAN J. FIELD
ANNIKA BOONE BARKDULL
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com

_Counsel for Plaintiff-Appellant_

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Brief of Appellant complies with the type-face requirements of Fed. R. App. P. 32(a)(5) & (6) and this Court's Order of July 19, 2023 allowing up to 8,500 in that it uses Century Schoolbook 14-point type and contains 7,011 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f). The number of words was determined through the word-count function of Microsoft Word.

*s/Gene C. Schaerr*
Gene C. Schaerr

## ANTI-VIRUS CERTIFICATION

I hereby certify that the foregoing Brief of Appellant submitted in PDF format via the ECF system was scanned using the current version of McAfee and no viruses or other security risks were found.

*s/Gene C. Schaerr*
Gene C. Schaerr