# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

CARTER PAGE,

Plaintiff-Appellant,

v.

JAMES B. COMEY, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Columbia

# BRIEF FOR APPELLEES U.S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, AND UNITED STATES OF AMERICA

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

SHARON SWINGLE
JOSEPH F. BUSA
  *Attorneys, Appellate Staff
  Civil Division, Room 7537
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel for defendants-appellees the U.S. Department of Justice, the Federal Bureau of Investigation, and the United States of America certifies as follows:

### A.    Parties and Amici

Plaintiff in district court, and appellant here, is Carter Page. Defendants in district court, and appellees here, are James B. Comey, Andrew McCabe, Kevin Clinesmith, Peter Strzok, Lisa Page, Joe Pientka, III, Stephen Somma, Brian J. Auten, the United States Department of Justice, the Federal Bureau of Investigation, and the United States of America. There were no amici or intervenors in district court. At the time of filing, there were no amici or intervenors before this Court.

### B.    Rulings Under Review

Plaintiff-appellant seeks review of the September 1, 2022, Order and Memorandum Opinion in *Page v. Comey*, 628 F.Supp.3d 103 (D.D.C. 2022) (No. 1:20-cv-03460-DLF) (Friedrich, J.), granting

defendants-appellees' motions to dismiss. That opinion is reproduced at pages 217 to 270 of the Joint Appendix (JA).

## C.    Related Cases

The case on review has not previously been before this Court or any other. Counsel for the U.S. Department of Justice, the Federal Bureau of Investigation, and the United States of America is not aware of any related cases involving substantially the same parties and the same or similar issues, as defined in D.C. Circuit Rule 28(a)(1)(C).

 */s/ Joseph F. Busa*
JOSEPH F. BUSA
Counsel for Defendants-Appellees the
U.S. Department of Justice, the
Federal Bureau of Investigation, and
the United States of America

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................v

GLOSSARY ....................................................................................vii

STATEMENT OF JURISDICTION...............................................1

STATEMENT OF THE ISSUES.....................................................1

PERTINENT STATUTES ...............................................................3

STATEMENT OF THE CASE .........................................................3

    A.    The Foreign Intelligence Surveillance Act.............................3

    B.    Factual Background.................................................................5

    C.    District Court Dismisses Plaintiff's Claims ..........................7

SUMMARY OF ARGUMENT ......................................................11

STANDARD OF REVIEW............................................................13

ARGUMENT ................................................................................14

The District Court Correctly Dismissed The Claim Against The
    United States.................................................................................14

    A.    The Claim Is Time-Barred....................................................14

    B.    The Claim Fails On The Merits.............................................20

        1.    The district court correctly rejected the argument
                plaintiff made in district court. ....................................21

        2.    Plaintiff's new argument is forfeited and also
                fails on the merits. ........................................................23

CONCLUSION ............................................................................34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                          **Page(s)**

*Al-Haramain Islamic Found., Inc. v. Obama,*
   705 F.3d 845 (9th Cir. 2012) ............................................. 4, 22

*Banneker Ventures, LLC v. Graham,*
   798 F.3d 1119 (D.C. Cir. 2015) ............................................. 16

*Government of Manitoba v. Bernhardt,*
   923 F.3d 173 (D.C. Cir. 2019) ............................................... 29

*Hobson v. Wilson,*
   737 F.2d 1 (D.C. Cir. 1984) ................................................. 20

*McAfee v. FDA,*
   36 F.4th 272 (D.C. Cir. 2022) .............................................. 26

*Menoken v. Dhillon,*
   975 F.3d 1 (D.C. Cir. 2020) ................................................. 13

*Sprint Commc'ns Co., L.P. v. FCC,*
   76 F.3d 1221 (D.C. Cir. 1996) .............................................. 19

*Whiting v. AARP,*
   637 F.3d 355 (D.C. Cir. 2011) .............................................. 18


**Statutes:**

Foreign Intelligence Surveillance Act of 1978 (FISA):
   50 U.S.C. 1805(a)(2) ......................................................29-30
   50 U.S.C. 1805(a)(2)(A) ....................................................... 3
   50 U.S.C. 1805(d)(1)-(2)....................................................... 3
   50 U.S.C. 1806(a)..............................2, 3, 4, 8, 12, 14, 21, 22
   50 U.S.C. 1809(a)..........................................................2, 4
   50 U.S.C. 1809(a)(2) ......................................................... 21

50 U.S.C. 1809(b) ....................................................................4
50 U.S.C.  1810 .......................................................................2

18 U.S.C. 2712 ...........................................................2, 14, 21

18 U.S.C. 2712(a) ...........................................................5, 22

18 U.S.C. 2712(b)(2)...............................................2, 12, 14

28 U.S.C. 1291 .......................................................................1

28 U.S.C. 1331 .......................................................................1

**Rule:**

Fed. R. Evid. 201(b) ...........................................................18

**Other Authority:**

OIG, U.S. Dep't of Justice, *Review of Four FISA Applications
    and Other Aspects of the FBI's Crossfire Hurricane
    Investigation* (2019), https://perma.cc/AQC6-6QE5 ...............5

## GLOSSARY

| | |
|---|---|
| Br. | Plaintiff-Appellant's Opening Brief |
| JA | Joint Appendix |
| FISA | Foreign Intelligence Surveillance Act |
| FISC | Foreign Intelligence Surveillance Court |
| OIG | Office of the Inspector General |

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. 1331. JA30[DktEntry73at11]. The district court dismissed all claims on September 1, 2022, JA216[DktEntry114at1], and denied a timely motion to amend the judgment on January 18, 2023, JA273[DktEntry 126at1]. Plaintiff timely appealed on February 17, 2023. JA283 [DktEntry128at1]. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

The Foreign Intelligence Surveillance Court (FISC) authorized surveillance of plaintiff. Plaintiff contends that this authorization was obtained through false and misleading statements in the government's applications. He contends that the surveillance was therefore not properly authorized. And he claims that, as a result, defendants—current and former FBI officials and the United States—are liable to him under the Foreign Intelligence Surveillance Act (FISA) for the allegedly unlawful surveillance and the alleged use and disclosure of information acquired from that surveillance.

The district court dismissed plaintiff's claims against the FBI officials because those defendants were alleged to have been involved

only in the process of seeking FISC authorization; they were not plausibly alleged to have "engage[d] in" any surveillance themselves or to have themselves "disclose[d] or use[d]" information acquired from such surveillance, as required under the statutory provisions plaintiff invoked, 50 U.S.C. 1809(a), 1810. The court dismissed the claim against the United States because that claim restated the allegations against the FBI officials about how FISC authorization was obtained (allegedly through false and misleading representations) and did not allege that any information obtained from FISC-authorized surveillance was then used for an "[un]lawful purpose[]," as required under the separate statutory provision plaintiff invoked against the United States, 50 U.S.C. 1806(a); 18 U.S.C. 2712.

The privately represented FBI officials address the questions presented regarding the dismissal of the claims brought against them in a separate brief.

The questions addressed by the United States in this brief are:

1. Whether the claim against the United States is time-barred because it was submitted more than two years after it accrued, 18 U.S.C. 2712(b)(2), and;

2. Whether plaintiff failed to state a claim that the government used information it acquired from electronic surveillance of plaintiff for an "[un]lawful purpose[]," 50 U.S.C. 1806(a).

## PERTINENT STATUTES

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    The Foreign Intelligence Surveillance Act

FISA provides that the FISC may authorize the government to conduct electronic surveillance for foreign-intelligence purposes if, among other things, the court determines "on the basis of the facts submitted" in the government's application that "there is probable cause to believe" that the target is "an agent of a foreign power." 50 U.S.C. 1805(a)(2)(A). An order authorizing surveillance of a U.S. person on that basis may last for up to 90 days, subject to extension upon "new findings made in the same manner as required for an original order." 1805(d)(1)-(2).

FISA provides for individual criminal and civil liability in certain circumstances involving unauthorized surveillance. Section 1809 makes it a crime to "intentionally" (1) "engage[] in electronic surveillance under color of law except as authorized" or (2) "disclose[] or use[]

information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized." 50 U.S.C. 1809(a). Those prohibitions do not apply if "the electronic surveillance was authorized by and conducted pursuant to" a "court order." 1809(b). Section 1810 creates a civil cause of action by which an aggrieved person may seek damages from a "person who committed [a] violation" of Section 1809 by engaging in surveillance without authorization or disclosing or using information so obtained. Section 1810 provides for civil suits only against defendants in their individual capacities; it does not waive the sovereign immunity of the United States. *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 853 (9th Cir. 2012).

Congress has waived the United States' sovereign immunity for suits involving violations of a different provision of FISA governing the use of information acquired from electronic surveillance. As relevant here, Section 1806(a) provides that "[n]o information acquired from an electronic surveillance pursuant to" FISA "may be used or disclosed by Federal officers or employees except for lawful purposes." 50 U.S.C. 1806(a). A person aggrieved by a "willful violation" of that requirement

may seek damages from the United States under 18 U.S.C. 2712(a), a provision of the PATRIOT Act.

## B. Factual Background

This case arises from FISC-authorized FISA surveillance of plaintiff Carter Page. As discussed in a report issued by the Department of Justice's Office of the Inspector General (OIG), that surveillance occurred pursuant to an original application and three renewal applications, each approved by the FISC, during an 11-month period in 2016 and 2017 as part of the FBI's Crossfire Hurricane investigation. OIG, U.S. Dep't of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* i (2019), https://perma.cc/AQC6-6QE5. The Crossfire Hurricane investigation examined "whether individuals associated with the Donald J. Trump for President Campaign were coordinating, wittingly or unwittingly, with the Russian government's efforts to interfere in the 2016 U.S. presidential election." *Id.*

The OIG report concluded that this investigation was properly predicated. OIG Report iii. But it also found, as the FISC later summarized, "significant factual inaccuracies and omissions" in the

Page FISA applications "relevant to whether there was probable cause to believe Page was an agent of the Russian government." JA109[Dkt Entry88-17at1]. For example, the applications "relied on information from reports prepared by Christopher Steele" in a so-called dossier regarding alleged contacts between Page and Russians, but "information bearing on Steele's personal credibility and professional judgment" was "omitted or mischaracterized" in the applications. JA114-115[DktEntry88-17at6-7]. "[I]nformation about Page's prior relationship with another U.S. government agency was [also] not disclosed to the Court." JA113-114[DktEntry88-17at5-6]. That omission was the result of several factors, *see* OIG Report 157-160, 247-256, including because an FBI attorney "added text to an email from the other agency stating that Page was 'not a source,'" JA113-114[Dkt Entry88-17at5-6].

The government reported these and other errors and omissions to the FISC and conveyed the government's determination that, in light of those errors, in the last two renewal applications, "if not earlier, there was insufficient predication to establish probable cause to believe that Page was acting as an agent of a foreign power." JA130[DktEntry88-

18at3]. As the FISC has recognized, the government has since "undertak[en] multiple remedial measures," supervised by the FISC, to ensure accurate and candid FISC applications. JA109[DktEntry88-17at2]. The government also prosecuted the FBI attorney who altered the email for making false statements to the government. No. 20-cr-00165-JEB (D.D.C. Feb. 2, 2021).

### C. District Court Dismisses Plaintiff's Claims

**1.** Plaintiff sought damages from eight current and former FBI officials, in their individual capacities, and from the United States. Plaintiff alleged that the individual-capacity defendants "caused false or misleading information to be provided to the FISC" "[i]n order to mislead the FISC into concluding that there was probable cause to believe that Dr. Page was a Russian agent." JA25[DktEntry73at6]. Plaintiff contended that, as a result, "[t]he four FISA warrants to surveil Dr. Page were obtained unlawfully." JA30[DktEntry73at11]. And he claimed that the individual-capacity defendants were thus liable under Section 1810 for violating Section 1809(a) by (1) engaging in unauthorized surveillance and (2) disclosing or using information obtained from unauthorized surveillance. JA75-79[DktEntry73at56-60].

Plaintiff sought damages from the United States on the same basis. He alleged that the government used or disclosed FISA-acquired information "knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized by the FISA." JA84[DktEntry73at65]. Plaintiff claimed that using or disclosing information obtained in this manner violated the requirement in Section 1806, made actionable against the government by Section 2712, that FISA-acquired information be used only "for lawful purposes." 50 U.S.C. 1806(a).

**2.** The district court dismissed all claims. JA227-270[DktEntry115at11-54]. The court dismissed the engage-in-surveillance claims against the individual-capacity defendants on the merits based on its legal conclusion that "one who 'engage[s] in electronic surveillance' under §§ 1809(a) and 1810 is one who participates in collecting the target's communications using certain devices," not one who is "responsible for gaining approval to do so." JA242-243[DktEntry115at26-27] (alteration in original) (emphasis omitted). Plaintiff's allegations focused on the individual-capacity defendants' role in obtaining FISC authorization; plaintiff did not

"allege that any of the individual defendants personally conducted the surveillance" at issue. JA244-245[DktEntry115at28-29].

The court also held that plaintiff failed to state a disclose-or-use claim against the individual-capacity defendants. The court explained that plaintiff's "allegations that the individual defendants used and disclosed the fruits of the allegedly unlawful surveillance" in various ways—such as through media leaks, to take other investigatory steps, or in applications to renew FISA surveillance—were "conclusory" and failed to "provid[e] any details about" each defendant's "individual actions." JA249[DktEntry115at33].

The court also dismissed the Section 2712/1806(a) claim against the United States. JA257-261[DktEntry115at41-45]. The court noted that, as with the individual-capacity claims, the complaint alleged that the government used or disclosed information it had acquired from surveillance conducted pursuant to FISC authorization that was allegedly obtained using false or misleading statements. JA257[DktEntry115at41]. But that allegation, the court explained, "merely restates the elements for a violation under § 1809(a)," the provision at issue in the individual-capacity claims, "rather than one

under § 1806(a)," the provision made actionable against the government by Section 2712. JA258[DktEntry115at42]. The court explained that Section 1806(a) does not turn on whether there was unauthorized surveillance; it instead requires that information acquired from electronic surveillance (whether acquired with or without proper authorization) be used or disclosed only for a lawful purpose. JA260-261[DktEntry115at44-45]. Plaintiff's complaint, by focusing on the allegedly unauthorized collection of information and not on any subsequent use of information for an unlawful purpose, failed to state a claim under Section 1806(a).

The court also concluded that plaintiff's allegation that FISA-acquired information had been used or disclosed at all (whether for a lawful purpose or otherwise) failed for additional reasons. The allegation that the government used FISA-acquired information to take other investigative steps was never presented in an administrative claim and was forfeited (a conclusion that plaintiff does not dispute on appeal). JA258[DktEntry115at42]. The allegation that the government gave FISA-acquired information to the media also failed because the complaint identified no media leaks containing FISA-acquired

information (another conclusion plaintiff does not dispute on appeal). JA259[DktEntry115at43]. Finally, the court held, plaintiff's contention that the government used FISA-acquired information from FISC-authorized surveillance of plaintiff in subsequent renewal applications was "undercut by his other assertions" that the renewal applications "did not outline any foreign intelligence information that had been gathered" and that "the surveillance under each warrant produced 'no evidence at all' that he acted as a Russian agent." JA261[DktEntry115at45].[1]

## SUMMARY OF ARGUMENT

The district court correctly dismissed the claim against the United States, and that judgment should be upheld for either of two independent reasons.

**A.** The claim against the United States is time-barred. Plaintiff has publicly claimed since early 2017 that he was subject to "unjustified, politically motivated government surveillance,"

---

[1] In addition to dismissing these FISA claims, the court also dismissed Federal Tort Claims Act, Privacy Act, and *Bivens* claims. JA251-257, 261-268[DktEntry115at35-41, 45-52]. Plaintiff's opening brief does not contest dismissal of those claims.

JA96[DktEntry88-8at3], but he did not present that claim until late 2020, JA84[DktEntry73at65], outside the two-year limitations period. 18 U.S.C. 2712(b)(2).

**B.** The claim also fails on the merits.

**1.** Plaintiff alleges that FISA surveillance of him was not properly authorized and that any use or disclosure of information obtained from that surveillance was therefore prohibited under 50 U.S.C. 1806(a). JA84[DktEntry73at65]. That claim fails as a matter of law for the reasons given by the district court. Lawful authorization, though potentially relevant to a claim under Section 1809(a), is irrelevant to a claim under Section 1806(a), which instead focuses on whether the results of electronic surveillance are used for a lawful purpose. Plaintiff's briefing in district court ignored the lawful-purpose element of the Section 1806(a) claim and instead focused on the non-element of the allegedly unauthorized nature of the surveillance. The district court thus correctly held that plaintiff failed to state a Section 1806(a) claim as a matter of law.

**2.** Plaintiff's new argument on appeal is that using FISA-acquired information in applications to renew FISA surveillance is an unlawful purpose under Section 1806(a).

**a.** That new argument is forfeited because it was not presented in district court. This appeal can and should be resolved on that basis if the court concludes the claim against the United States was timely presented.

**b.** Plaintiff's new argument also fails on the merits. It is foreclosed by the complaint, which specifically alleges that the renewal applications "did not outline any foreign intelligence information that had been gathered" in prior FISA surveillance of plaintiff. JA45-46[DktEntry73at26-27]. In any event, there would be nothing improper about accurately conveying FISA-obtained information in an application to renew FISA surveillance.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's dismissal." *Menoken v. Dhillon*, 975 F.3d 1, 5 (D.C. Cir. 2020).

# ARGUMENT

## THE DISTRICT COURT CORRECTLY DISMISSED THE CLAIM AGAINST THE UNITED STATES.

In the complaint, plaintiff claims that "[t]he United States is liable to Dr. Page" under 18 U.S.C. 2712 and 50 U.S.C. 1806(a) because "the individual Defendants, acting in violation of the FISA, obtained, disclosed, or used information obtained by electronic surveillance of Mr. Page knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized by the FISA." JA84[DktEntry73at65]. This Court should affirm dismissal of that claim because it (A) is time-barred, and (B) fails to state a claim on which relief can be granted.

### A. The Claim Is Time-Barred.

A Section 2712 claim "shall be forever barred unless it is presented … within 2 years after such claim accrues." 18 U.S.C. 2712(b)(2). Plaintiff first presented his Section 2712 claim on September 30, 2020. JA84[DktEntry73at65]. Accordingly, to be timely presented, that claim must have accrued on or after September 30, 2018. Accrual occurs when "the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. 2712(b)(2). The violation alleged against the

United States is that the government obtained, disclosed, or used information that "was obtained through electronic surveillance not lawfully authorized by the FISA." JA84[DktEntry73at65]. Plaintiff has publicly contended that FISC authorization was obtained through alleged malfeasance in the applications and without probable cause since at least early 2017 (in materials incorporated into the complaint), and by February or April 2018 at the latest (in judicially noticeable materials). The Section 2712 claim thus accrued more than two years before it was first presented in September 2020.

A *Washington Post* article dated April 11, 2017, that is extensively quoted and referenced in the complaint, JA68[DktEntry73at49], reports that: (i) plaintiff was the target of FISC-authorized FISA surveillance pursuant to an original order and multiple renewals; (ii) the basis on which the government sought FISC authorization was Page's alleged contacts with Russian operatives; and (iii) the so-called Steele dossier discussed Page's alleged Russian contacts. JA95-98[DktEntry88-8at2-5]. Plaintiff is quoted in the same article as saying that this news "confirms all of my suspicions about unjustified, politically motivated government surveillance." JA96[DktEntry88-8at3]. He "dismissed what

he called 'the dodgy dossier' of false allegations," JA98[DktEntry88-8at5], maintained that his prior connections with Russians were innocuous, and said that he assisted the government in an earlier espionage case against a Russian, JA100[DktEntry88-8at7].[2]

Plaintiff's own words in a newspaper article incorporated by reference into the complaint thus demonstrate that, in April 2017, he thought he had a reasonable basis to allege that the government improperly procured unjustified FISC authorization on the basis of false information about his alleged contacts with Russians, much more than two years before he first presented that claim in September 2020.

The untimely nature of plaintiff's claim is further confirmed by his numerous other statements in judicially noticeable records. In May 2017, for example, plaintiff testified before a congressional committee about his certainty, based on what he knew at that time, that the government's FISA applications would "inevitably be filled with a

_____

[2] "Page did not include this portion of the article in his complaint," but, as the district court explained, "Page does not object to the defendants' reliance on the article," which the complaint "'specifically references' and relies on." JA232 n.7[DktEntry115at16 n.7]; *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015) (document "[i]ncorporated by reference" where "referred to in the complaint and integral to the plaintiff's claim" (cleaned up)).

potpourri of falsehoods from the Clinton/Obama regime which fabricated this travesty from the outset." JA102[DktEntry88-11at7]. In February 2018, the same congressional committee released a declassified memorandum detailing "material and relevant information" that was allegedly "omitted" from the FISA applications, including information about the so-called Steele dossier. JA104, 107[DktEntry88-12at2, 5]. Commenting on that memorandum the day it was released, plaintiff praised it for "discovering this unprecedented abuse of process." JA108[DktEntry88-15at2].

That same day in February 2018, plaintiff also filed a letter in a federal district court about the memorandum. That court was hearing plaintiff's defamation claim regarding statements in the press about his alleged connections with Russians. *See Page v. Oath Inc.*, No. 17-cv-6990 (S.D.N.Y.). Plaintiff advised the court of the newly declassified memorandum and its discussion of alleged errors and omissions in the FISA applications regarding the dossier, and he contended that the FISA warrants were "illegitimate" and "politically-motivated." JA134-135[DktEntry88-26at2-3]. In another court filing in the same case, in April 2018, plaintiff asserted that the memorandum provided "evidence

that the defamatory articles" in the press related to the dossier "allegedly contributed to significant abuses of process" such as "the illegal surveillance that was enabled by this false evidence of defamatory reports submitted to the FISC." JA137[DktEntry88-28at3].

In the present case, the government requested that the district court take judicial notice of plaintiff's own public statements in records the accuracy of which cannot be reasonably questioned. JA88, 89-93, 94[DktEntry88-1at18, 23-27, 48]; Fed. R. Evid. 201(b); *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) ("[T]he district court may take judicial notice in ruling on a motion to dismiss."). Plaintiff did not dispute that he made these statements or otherwise contend that the statements could not be judicially noticed. JA210-215[DktEntry99at14-19]. He instead contended that his claim against the United States did not accrue until the publication of the OIG report in December 2019, which discussed several alleged errors and omissions in the FISA applications. JA212[DktEntry99at16]. He did not explain why the alleged errors and omissions discussed in the OIG report would start the clock while the alleged errors and omissions discussed in the earlier

memorandum (many of which, such as allegations about the dossier, overlap with the allegations in the OIG report) would not.

The district court concluded, on the basis of the sources discussed above, that "it is true that Page had notice of the alleged violations before September 30, 2018." JA259[DktEntry115at43]. The court nonetheless concluded that it could not "at this stage" "conclusively" determine precisely "when" plaintiff could have reasonably discovered "every" aspect of the alleged violations. JA259[DktEntry115at43]. But accrual is not delayed until a plaintiff "has access to or constructive knowledge of all the facts required to support [a] claim." *Sprint Commc'ns Co., L.P. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996).

Here, plaintiff's claim about the allegedly unlawful origin of FISA surveillance conducted against him accrued in April 2017, when he told a reporter that he had been subject to "unjustified, politically motivated government surveillance," JA96[DktEntry88-8at3]; later in February 2018, when plaintiff told a reporter that a memorandum discussing alleged errors and omissions in the FISA applications amounted to the "discover[y]" of an "unprecedented abuse of process," JA108[Dkt Entry88-15at2]; or at the latest in April 2018, when he told a federal

judge about "the illegal surveillance that was enabled by this false evidence of defamatory reports submitted to the FISC." JA137[DktEntry88-28at3]. Affirming dismissal on this basis would not require that plaintiff "file suit on a hunch." *Hobson v. Wilson*, 737 F.2d 1, 39 (D.C. Cir. 1984). It would simply give effect to plaintiff's own account of what he knew about his potential claim against the United States more than two years before he presented it.

## B. The Claim Fails On The Merits.

Even if the claim against the United States were not time-barred, it would fail on the merits for multiple reasons. (1) The district court correctly held that the complaint failed to state a claim against the United States because it focused on the allegedly unlawful manner in which the government obtained FISC authorization, which is not an element of a Section 2712/1806(a) claim, rather than on the lawfulness of the purposes for which FISA-acquired information was subsequently used, which is a necessary element of such a claim. (2) Plaintiff's new argument on appeal, that alleged use of FISA-obtained information in the FISA renewal applications was for an unlawful purpose, is forfeited, foreclosed by facts alleged in the complaint, and fails on its own terms

because there is nothing unlawful about allegedly giving the FISC the truthful and accurate results of prior surveillance when seeking renewal.

### 1. The district court correctly rejected the argument plaintiff made in district court.

The only claim plaintiff maintains on appeal against the United States is a claim under 18 U.S.C. 2712 for alleged violations of 50 U.S.C. 1806(a). JA83-85[DktEntry73at64-66]; Br.78. The complaint pleads that the United States is liable because the individual defendants allegedly disclosed or used FISA-obtained information "knowing or having reason to know that the information was obtained through electronic surveillance not lawfully authorized by the FISA." JA84[DktEntry73at65].

As the district court correctly noted, that pleading "merely restates" the language of Section 1809, JA258[DktEntry115at42], which prohibits disclosure or use of information obtained by electronic surveillance (regardless of whether that disclosure or use would otherwise be lawful) if "the information was obtained through electronic surveillance not authorized" by law, 50 U.S.C. 1809(a)(2). But Congress has not waived the sovereign immunity of the United States for civil

claims arising from alleged violations of Section 1809, as the district court correctly held, JA258[DktEntry115at42], and plaintiff does not dispute, *see* Br.78-87; *Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 850-55 (9th Cir. 2012).

The waiver of sovereign immunity on which plaintiff relies waives the immunity of the United States only, as relevant here, for willful violations of another provision of FISA, Section 1806(a). 18 U.S.C. 2712(a) (waiving immunity for certain violations of "section[] 106(a)" of FISA). Section 1806(a) provides that information acquired from an electronic surveillance (regardless of whether that surveillance was properly authorized) may only be used or disclosed for "lawful purposes." 50 U.S.C. 1806(a).

Accordingly, as the district court correctly explained, "[t]o plead a violation of" Section 2712 "relying on § 1806(a), Page must allege that the FISA information was used or disclosed … *for an unlawful purpose*." JA260[DktEntry115at44]. "Page instead claims that the federal officers knew that the disclosed information had been *acquired* through unauthorized surveillance," but "[t]he unlawful *collection* of information is not equivalent to *using* the information, once obtained, for an

unlawful purpose, in violation of § 1806(a)." JA260-261[DktEntry 115at44-45]. Plaintiff thus fails to state a claim under Section 2712/1806(a) on which relief could be granted.

### 2. Plaintiff's new argument is forfeited and also fails on the merits.

On appeal, plaintiff now abandons his prior contention that the government is liable under Section 2712/1806(a) for using or disclosing information that was acquired from unauthorized electronic surveillance. His opening brief makes no argument defending that position or disputing the district court's conclusion that, in order to state a claim under Sections 2712/1806(a), plaintiff must plausibly allege that the government used for an unlawful purpose information it previously acquired from FISA surveillance (regardless of whether that surveillance was properly authorized).

Plaintiff instead advances a new argument on appeal. He contends that the government used FISA-acquired information for an unlawful purpose when it allegedly used information obtained from FISA surveillance in subsequent renewal applications. Br.78-87. That new argument (a) is forfeited and, in any event, (b) fails on the merits.

**a.** Plaintiff's new theory is forfeited because he did not argue it before the district court.

**i.** In briefing before the district court, plaintiff contended that, "[u]nder 18 U.S.C. § 2712, the United States is liable if one of its agents discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by FISA." JA208[DktEntry99at11]. Under that rubric, he urged, the complaint "plausibly alleges several different ways in which the Individual Defendants disclosed or used information obtained through the warrants against Dr. Page, knowing or having reason to know that the surveillance was not lawfully authorized by FISA." JA208[DktEntry99at11].

When the government pointed out that plaintiff had to identify an *unlawful purpose* for which FISA-acquired information was used, and that he had not done so, plaintiff declined to identify any unlawful purpose and instead doubled down on his original theory: "The Government contends that seeking authorization from the FISC for electronic surveillance is not an unlawful purpose," he noted.

JA209[DktEntry99at13]. He responded (incorrectly) that legislative history "demonstrates" that Section 1806(a) "covers 'information obtained under color of law by electronic surveillance [by persons] knowing or having reason to know that the information was obtained through electronic surveillance not authorized by statute.'" JA209[DktEntry99at13] (alteration in original); *see* JA260[DktEntry 115at44] (district court explaining that the cited legislative history addresses Section 1809, not 1806). Plaintiff's arguments regarding accrual also hinged on the same mistaken theory: "Dr. Page's claim … did not accrue until he knew that the FISA warrants covering him had been obtained without probable cause by making material misrepresentations and omissions, which rendered the disclosure or use of information obtained through those warrants unlawful." JA215[DktEntry99at19].

In sum, plaintiff's sole argument in district court was that any use would be prohibited, regardless of whether that use would otherwise be unlawful, because the information was obtained from surveillance allegedly conducted without proper authorization. Plaintiff's new argument on appeal, that using FISA-obtained information in the

renewal applications was an unlawful purpose, was not made below, which is why the district court's thorough opinion does not address it. That new argument is thus forfeited. This appeal can and should be decided on that basis, if this Court first concludes that the claim is not time-barred. *McAfee v. FDA*, 36 F.4th 272, 274 (D.C. Cir. 2022).

**ii.** Plaintiff fails to acknowledge the significant difference between what he argued in district court and what he now contends on appeal. Rather than try to show that his appellate argument is reflected anywhere in his district court briefing, plaintiff instead points to the complaint. In particular, he says, the complaint alleges that the defendants "'used information obtained by electronic surveillance … in violation of the FISA Act' for the unlawful purpose of 'mislead[ing] the FISC … to obtain surveillance despite the absence of probable cause.'" Br.82-83 (alterations in original). That is not an accurate characterization of the quoted passages.

In the part of the complaint discussing the claim against the United States, in language that plaintiff replaces with an ellipsis in his appellate brief, plaintiff states his view (at that time) that the United States was liable for "us[ing] information" that was "obtained through

electronic surveillance not lawfully authorized by the FISA."
JA84[DktEntry73at65]. That part of the complaint does not allege that
FISA-obtained information was used for any unlawful purpose or to
mislead the FISC.

Fifty-nine pages earlier, in the introductory section of the
complaint, plaintiff sets out his allegations regarding why surveillance
was not properly authorized (and thus why any use or disclosure of
FISA-obtained information would, on his view at the time, not be
allowed). There, plaintiff alleges that the FISA applications "misle[]d
the FISC" by not "fully and accurately disclos[ing]" material
information "to achieve the unlawful end" of "obtain[ing] surveillance
despite the absence of probable cause." JA25[DktEntry73at6]. That part
of the complaint says nothing about using *information obtained from
electronic surveillance of plaintiff* to mislead the FISC. As the
paragraphs before and after this paragraph in the complaint make
clear, this portion of the complaint sets out the allegation that the
government obtained FISC authorization using the false and incomplete
information like that discussed in the OIG report, such as information
about Steele and the dossier. *See* JA23-26[DktEntry73at4-7]. The

portions of the complaint on which plaintiff now relies thus do not support his newfound theory.

A different portion of the complaint—containing language that plaintiff does not rely on in his brief—is more relevant but still insufficient. The complaint alleges that "Defendants used the information obtained from the issued FISA warrants to obtain each of the subsequent warrants *as well as* to conceal that: earlier applications had lacked probable cause." JA70[DktEntry73at51]. That passage does not say that the government used FISA-obtained materials in renewal applications in order to mislead the FISC into granting an application (plaintiff's argument on appeal). And the only paragraph of the complaint directly addressing the theory of liability against the United States relies exclusively on the now-abandoned assertion that any use or disclosure of FISA-acquired information would violate Section 2712/1806(a) because "the information was obtained through electronic surveillance not lawfully authorized by the FISA." JA84[DktEntry73at65]. Indeed, the terms "lawful purpose(s)," "unlawful purpose(s)," or even "purpose(s)," do not appear in the complaint, JA20-86[DktEntry73at1-69], because that element of a

Section 1806(a) claim was not part of plaintiff's theory of liability in the complaint.

In any event, even if some passage of the complaint could be read to gesture at plaintiff's argument on appeal, that would not save that argument from forfeiture. As this Court has held, "a threadbare allegation included in [the] complaint does not help" a plaintiff because "[a] party forfeits an argument by mentioning it only in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Government of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (quotation marks omitted). As discussed above, plaintiff's briefing in district court did not flesh out the argument he now makes on appeal. That argument is thus forfeited.

**b.** Plaintiff's newfound argument fails on the merits in any event. Including the results of prior FISA surveillance in an application to renew FISA surveillance would not be unlawful. It would merely provide the FISC with additional accurate information on which to make its decision about whether the application establishes probable cause to believe the target is an agent of a foreign power. *See* 50 U.S.C.

1805(a)(2) (requiring the FISC to make its determination "on the basis of the facts submitted by the applicant"). Plaintiff fails to identify any authority suggesting that the inclusion of FISA-acquired information in a renewal application would constitute use for an unlawful purpose. Indeed, elsewhere in his brief, plaintiff suggests that the government *must* include FISA-acquired information in a renewal application. Br.81 (contending that "to renew an authorization, the government must 'justify continued FISA coverage' in light of any 'new findings' learned from the ongoing surveillance" (quoting OIG Report 39)).

Plaintiff contends that it is unlawful to knowingly include "false" information in an application, "omit[]" material information, or otherwise "manipulate[]" information to "mislead a court." Br.79-80. Plaintiff alleges that the FISA applications here omitted relevant information about *non*-FISA-obtained information, such as information about Christopher Steele and the origin of the so-called dossier. *E.g.*, JA25-26[DktEntry73at6-7]. But plaintiff (correctly) does not contend that the alleged inclusion of such false or misleading *non*-FISA-obtained information in a FISA application is actionable against the government under Section 2712/1806(a). Section 1806(a) governs only the use of

FISA-obtained information, as explained above and as plaintiff now appears to concede. And plaintiff does not contend that the government falsified, misleadingly omitted, or otherwise manipulated any FISA-obtained information in the FISA renewal applications.

Plaintiff's sole theory on appeal for why the complaint states a claim for the use of FISA-obtained information for an unlawful purpose is that "when a renewal application *incorporates* information obtained from prior surveillance"—truthfully and accurately—but "*omit[s]* exculpatory information"—again, information not alleged to have been obtained from FISA surveillance—"then any included FISA-acquired information served the 'unlawful purpose' of misleading the FISC into granting the application where the government knew probable cause did not exist." Br.81.

That argument is precluded by the complaint. There, plaintiff alleged that "FISA surveillance of Dr. Page had produced no foreign intelligence information and revealed no evidence at all of Dr. Page acting as a foreign agent of Russia," and that the renewal applications thus "did not outline any foreign intelligence information that had been gathered." JA45-46[DktEntry73at26-27]; *accord* JA48, 50[DktEntry

73at29, 31]. Plaintiff does not attempt to reconcile those allegations with his new argument. There is no information that could help "obscure the fact that no probable cause exists," Br.82, while also providing "no evidence at all of Dr. Page acting as a foreign agent of Russia," JA45-46[DktEntry73at26-27].

Plaintiff's new argument also fails on its own terms. The allegedly false or misleading aspects of the FISA applications, such as certain statements regarding the so-called dossier and its author, had nothing to do with any information allegedly acquired from electronic surveillance of plaintiff. Plaintiff thus does not allege in his complaint or contend on appeal that the renewal applications included FISA-obtained information that was so closely related to or intertwined with allegedly false or misleading *non*-FISA-obtained information that the FISA-obtained information would itself be misleading.

To be clear, deliberately including false or misleading information in a FISA application in order to mislead the FISC into authorizing surveillance is not permitted, regardless of whether the false or misleading information derives from FISA or any other source. But, as it often does, Congress has carefully circumscribed the types of claims

that can be brought against the United States in court and has otherwise relied on different oversight mechanisms, such as FISC and OIG review. Plaintiff here fails to state a claim on which relief can be granted in court because including false or misleading *non-FISA-obtained* information in an application, as plaintiff contends occurred here, would not fall within the scope of Section 1806(a). Plaintiff does not plausibly allege that any *FISA-obtained* information used in an application would itself have been false or misleading in any respect. And it is plainly lawful to include truthful and accurate FISA-acquired information in a renewal application, as doing so could only help the FISC reach an accurate determination regarding probable cause.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

SHARON SWINGLE
/s/ Joseph F. Busa
JOSEPH F. BUSA
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-1754*
*Joseph.F.Busa@usdoj.gov*

APRIL 10, 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and this Court's Order of July 19, 2023, requiring that all defendants file no more than two briefs with a combined word limit of 17,000 words, because it contains 5,754 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

 */s/ Joseph F. Busa*
JOSEPH F. BUSA
Counsel for Defendants-Appellees the
U.S. Department of Justice, the
Federal Bureau of Investigation, and
the United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2024, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court

of Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system. Service will be accomplished by the appellate CM/ECF

system.

*/s/ Joseph F. Busa*
JOSEPH F. BUSA
Counsel for Defendants-Appellees the
U.S. Department of Justice, the
Federal Bureau of Investigation, and
the United States of America

# ADDENDUM

# TABLE OF CONTENTS

FISA Exerpts

    50 U.S.C. § 1806 ................................................................. A1

    50 U.S.C. § 1809 ................................................................. A1

    50 U.S.C. § 1810 ................................................................. A2

PATRIOT Act Exerpt

    18 U.S.C. § 2712 ................................................................. A2

**50 U.S.C. § 1806. Use of information**

**(a) Compliance with minimization procedures; privileged communications; lawful purposes**. Information acquired from an electronic surveillance conducted pursuant to this subchapter concerning any United States person may be used and disclosed by Federal officers and employees without the consent of the United States person only in accordance with the minimization procedures required by this subchapter. No otherwise privileged communication obtained in accordance with, or in violation of, the provisions of this subchapter shall lose its privileged character. No information acquired from an electronic surveillance pursuant to this subchapter may be used or disclosed by Federal officers or employees except for lawful purposes.

. . .

**50 U.S.C. § 1809. Criminal sanctions**

**(a) Prohibited activities.** A person is guilty of an offense if he intentionally—

> (1) engages in electronic surveillance under color of law except as authorized by this chapter, chapter 119, 121, or 206 of title 18, or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title;

> (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter, chapter 119, 121, or 206 of title 18, or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title.

**(b) Defense**. It is a defense to a prosecution under subsection (a) that the defendant was a law enforcement or investigative officer engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction.

. . .

**50 U.S.C. § 1810. Civil liability**

An aggrieved person, other than a foreign power or an agent of a foreign power, as defined in section 1801(a) or (b)(1)(A) of this title, respectively, who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation of section 1809 of this title shall have a cause of action against any person who committed such violation and shall be entitled to recover—

(a) actual damages, but not less than liquidated damages of $1,000 or $100 per day for each day of violation, whichever is greater;

(b) punitive damages; and

(c) reasonable attorney's fees and other investigation and litigation costs reasonably incurred.

**18 U.S.C. § 2712. Civil actions against the United States**

**(a) In General**.—Any person who is aggrieved by any willful violation of this chapter or of chapter 119 of this title or of sections 106(a), 305(a), or 405(a) of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.) may commence an action in United States District Court against the United States to recover money damages. In any such action, if a person who is aggrieved successfully establishes such a violation of this chapter or of chapter 119 of this title or of the above specific provisions of title 50, the Court may assess as damages—

(1) actual damages, but not less than $10,000, whichever amount is greater; and

(2) litigation costs, reasonably incurred.

**(b) Procedures**.—

(1) Any action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in title 28, United States Code.

(2) Any action against the United States under this section shall be forever barred unless it is presented in writing to the appropriate

Federal agency within 2 years after such claim accrues or unless action is begun within 6 months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. The claim shall accrue on the date upon which the claimant first has a reasonable opportunity to discover the violation.

. . .

. . .